UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ZAN SUN** and **QING LING CHENG**, <br><br>   Plaintiffs, <br><br>   v. <br><br> **SHEN YUN PERFORMING ARTS, INC., FEI TIAN COLLEGE, FEI TIAN ACADEMY OF THE ARTS, DRAGON SPRINGS BUDDHIST INC., HONGZHI LI, and RUI LEE,** <br><br>   Defendants. | **Case No.: 25-cv-03185** |

PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and 12(b)(6)

McALLISTER OLIVARIUS
John F.O. McAllister
Pamela Takefman
641 Lexington Avenue, 13th Floor
New York, New York 10022
(212) 433-3456
jmcallister@mcolaw.com
ptakefman@mcolaw.com
*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ iii

I.    INTRODUCTION ............................................................................................................. 1

II.   ARGUMENT ..................................................................................................................... 2

  A.   Standard ................................................................................................................... 2

  B.   Defendants' extraneous facts are inappropriate on a motion to dismiss and should be

  disregarded ...................................................................................................................... 2

  C.   Defendants rely on the wrong statute of limitations and Plaintiffs' claims are well

  within time ....................................................................................................................... 4

  D.   Plaintiffs plausibly allege multiple forms of actual and threatened serious physical and

  psychological harm sufficient to sustain a trafficking claim .......................................... 6

  E.   Defendants' First Amendment affirmative defense is not supported by either facts or

  law    ................................................................................................................................ 11

    1.   The ministerial exception does not apply to TVPRA claims ................................. 11

    2.   Factual disputes over Plaintiffs' status as ministers and Defendants' status as

    religious organizations preclude dismissal .................................................................. 14

  F.   Plaintiffs' detailed Amended Complaint gives Defendants fair notice for the bases of

  their claims and is therefore sufficient under Rule 8 .................................................... 20

  G.   Plaintiffs have sufficiently pleaded their document seizure, vicarious liability,

  beneficiary liability and attempt and conspiracy TVPRA claims ............................... 22

    1.   Under the totality of the circumstances, Plaintiffs have sufficiently alleged

    document seizure ......................................................................................................... 22

2.   Plaintiffs' vicarious liability and alter ego claims are adequately pleaded ............ 23

3.   Plaintiffs have plausibly alleged each element of their beneficiary liability claims.. ................................................................................................................... 25

4.   The TVPRA allows for multiple forms of attempt and conspiracy liability and Plaintiffs have successfully pleaded those claims .......................................................... 26

III.   CONCLUSION ................................................................................................................. 28

# TABLE OF AUTHORITIES

**Cases**

*Abafita v. Aldukhan*,
No. 16-cv-06072, 2019 U.S. Dist. LEXIS 59316 (S.D.N.Y. Apr. 4, 2019) ........................8

*Akhtar v. Vitamin Herbal Homeopathic Ctr.*,
No. 19-CV-1422, 2021 U.S. Dist. LEXIS 255148 (E.D.N.Y. Apr. 30, 2021) .....................27

*Alicea–Hernandez v. Cath. Bishop of Chi.,*
320 F.3d 698 (7th Cir. 2003) .....................................................................................15

*Anderson v. Greene*,
No. 14-cv-10249, 2016 U.S. Dist. LEXIS 105671 (S.D.N.Y. Aug. 10, 2016)......................3

*Angermeir v. Cohen*,
14 F. Supp. 3d 134 (S.D.N.Y. 2014)..........................................................................20

*Aparicio v. Christian Union, Inc.*,
No. 18-cv-00592, 2019 U.S. Dist. LEXIS 55938 (S.D.N.Y. Mar. 29, 2019)......................17

*Arista Records LLC v. Doe*,
604 F.3d 110 (2d Cir. 2010)......................................................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................2, 25

*Ashland Glob. Holdings Inc. v. Valvoline, Inc.*,
No. 21-cv-00498, 2022 U.S. Dist. LEXIS 13342 (S.D.N.Y. Jan. 25, 2022) ........................3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................21, 25

*Belya v. Kapral*,
45 F.4th 621 (2d Cir. 2022) .....................................................................................10

*Bensky v. Indyke*,
743 F. Supp. 3d 586 (S.D.N.Y. 2024).........................................................................5

*Brandenburg v. Greek Orthodox Archdiocese of N. Am.*,
    No. 20-cv-03809, 2023 U.S. Dist. LEXIS 30574 (S.D.N.Y. Feb. 23, 2023)......................10

*Brandenburg v. Greek Orthodox Archdiocese of N. Am.*,
    No. 20-cv-03809, 2021 U.S. Dist. LEXIS 102800 (S.D.N.Y. June 1, 2021) ...........12, 14, 15

*Califano v. Roman Cath. Diocese of Rockville Ctr.*,
    751 F. Supp. 3d 42 (E.D.N.Y. 2024) ...................................................................................15

*Cannata v. Cath. Diocese of Austin*,
    700 F.3d 169 (5th Cir. 2012) ...............................................................................................14

*Chiaramonte v. Animal Med. Ctr.*,
    No. 13-cv-05117, 2014 U.S. Dist. LEXIS 99930 (S.D.N.Y. July 22, 2014)..........................3

*Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*,
    714 F. Supp. 3d 416 (S.D.N.Y. 2024)..................................................................................24

*Citibank, N.A. v. Hello Flatbush LLC*,
    No. 23-cv-10920, 2025 U.S. Dist. LEXIS 157574 (S.D.N.Y. Aug. 14, 2025).....................10

*Cruz v. Maypa*,
    773 F.3d 138 (4th Cir. 2014) ...............................................................................................23

*Demkovich v. St. Andrew the Apostle Par.*,
    3 F.4th 968 (7th Cir. 2021) ..................................................................................................18

*Doe v. Franklin Square Union Free Sch. Dist.*,
    100 F.4th 86 (2d Cir. 2024) ...................................................................................................2

*Doe v. Gov't of United States V.I.*,
    771 F. Supp. 3d 379 (S.D.N.Y. 2025).....................................................................................5

*EEOC v. Roman Cath. Diocese*,
    213 F.3d 795 (4th Cir. 2000) ...............................................................................................15

*Franco v. Diaz*,
    51 F. Supp. 3d 235 (E.D.N.Y. 2014) ................................................................................8, 23

*Gao v. Gonzales,*
  424 F.3d 122 (2d Cir. 2005)..............................................................................18

*Goel v. Bunge, Ltd.,*
  820 F.3d 554 (2d Cir. 2016)..................................................................................3

*Guobadia v. Iowa,*
  103 F. Supp. 3d 325 (E.D.N.Y. 2015) ................................................................23

*Headley v. Church of Scientology Int'l,*
  No. CV 09-3986, 2010 U.S. Dist. LEXIS 84869 (C.D. Cal. Aug. 5, 2010)...................10, 13

*Headley v. Church of Scientology Int'l,*
  687 F.3d 1173 (9th Cir. 2012) ................................................................10, 11, 13

*Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.,*
  270 F. Supp. 3d 716 (S.D.N.Y. 2017)..................................................................24

*Hongxia Wang v. Enlander,*
  No. 17-cv-04932, 2018 U.S. Dist. LEXIS 37910 (S.D.N.Y. Mar. 6, 2018)...........................6

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC,*
  565 U.S. 171 (2012)............................................................................... *passim*

*Howard v. Mun. Credit Union,*
  No. 05-cv-07488, 2008 U.S. Dist. LEXIS 124085 (S.D.N.Y. Jan. 24, 2008) ......................20

*Hudak v. Berkley Grp., Inc.,*
  No. 13-CV-00089, 2014 U.S. Dist. LEXIS 8168 (D. Conn. Jan. 23, 2014)........................20

*Jusino v. Fed'n of Cath. Teachers,*
  54 F.4th 95 (2d Cir. 2022) ..................................................................................10

*Kravitz v. Purcell,*
  87 F.4th 111 (2d Cir. 2023) ................................................................................18

*Kitler v. Church of Jesus Christ of Latterday Saints,*
  No. 24-cv-01071, 2025 U.S. Dist. LEXIS 149001 (N.D.N.Y. Aug. 4, 2025).....................26

*Lateral Recovery, LLC v. Capital Merch. Servs., LLC*,
   632 F. Supp. 3d 402 (S.D.N.Y. 2022)...................................................................14

*Le v. New Eng. Swimming*,
   No. 24CV11559, 2025 U.S. Dist. LEXIS 155786 (D. Mass. Aug. 12, 2025) ........................4

*Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*,
   23 F. Supp. 3d 344 (S.D.N.Y. 2014)...................................................................21

*Levine v. AtriCure, Inc.*,
   594 F. Supp. 2d 471 (S.D.N.Y. 2009)..................................................................14

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   591 U.S. 657 (2020)....................................................................................12

*Martin v. SS Columba-Brigid Cath. Church*,
   No. CV 21-0491, 2022 U.S. Dist. LEXIS 144616 (W.D.N.Y. Aug. 11, 2022)....................16

*Michael Grecco Prods., Inc. v. RADesign, Inc.*,
   112 F.4th 144 (2d Cir. 2024) ..........................................................................4

*Minskoff v. Am. Express Travel Related Servs. Co.*,
   98 F.3d 703 (2d Cir. 1996).............................................................................24

*Morass v. White*,
   571 F. Supp. 3d 77 (S.D.N.Y. 2021)....................................................................22

*Muchira v. Al-Rawaf*,
   850 F.3d 605 (4th Cir. 2017) ........................................................................7, 23

*New York v. Town of Clarkstown*,
   95 F. Supp. 3d 660 (S.D.N.Y. 2015)....................................................................22

*Orr v. Christian Bros. High Sch.*,
   No. 21-15109, 2021 U.S. App. LEXIS 34810 (9th Cir. Nov. 23, 2021) ........................12

*Ortiz v. Parkchester N. Condo.*,
   No. 16-cv-09646, 2018 U.S. Dist. LEXIS 100069 (S.D.N.Y. June 13, 2018) ..................3, 4

*Our Lady of Guadalupe Sch. v. Morrissey-Berru,*
    591 U.S. 732 (2020)................................................................................ *passim*

*Paguirigan v. Prompt Nursing Emp't Agency LLC,*
    286 F. Supp. 3d 430 (E.D.N.Y. 2017) ............................................................7

*Paguirigan v. Prompt Nursing Emp't Agency LLC,*
    No. 17-CV-1302, 2019 U.S. Dist. LEXIS 165587 (E.D.N.Y. Sep. 23, 2019).....................27

*Patel v. Contemporary Classics of Beverly Hills,*
    259 F.3d 123 (2d Cir. 2001)...............................................................21

*Patrick v. LeFevre,*
    745 F.2d 153 (2d Cir. 1984)..............................................................18

*Penn v. N.Y. Methodist Hosp.,*
    884 F.3d 416 (2d Cir. 2018)...........................................................11, 17

*Penske Media Corp. v. Shutterstock, Inc.,*
    548 F. Supp. 3d 370 (S.D.N.Y. 2021)..................................................10

*Ratha v. Phatthana Seafood Co.,*
    35 F.4th 1159 (9th Cir. 2022) .........................................................27

*Ratha v. Rubicon Res., LLC,*
    No. 23-55299, 2025 U.S. App. LEXIS 5101 (9th Cir. Mar. 4, 2025) ................................27

*Rweyemamu v. Cote,*
    520 F.3d 198 (2d Cir. 2008)..............................................................10

*Ross v. Jenkins,*
    325 F. Supp. 3d 1141 (D. Kan. 2018) ..................................................8

*Salahuddin v. Cuomo,*
    861 F.2d 40 (2d Cir. 1988)...............................................................21

*Saraswat v. Jayaraman,*
    No. 15-CV-4680, 2016 U.S. Dist. LEXIS 133573 (E.D.N.Y. Sep. 28, 2016).....................23

*Schneider v. Osg, LLC*,
No. 22-CV-7686, 2024 U.S. Dist. LEXIS 55467 (E.D.N.Y. Mar. 27, 2024)............5, 6, 8, 9

*Shiner v. State Univ. of N.Y.*,
No. 11-CV-01024, 2012 U.S. Dist. LEXIS 157728 (W.D.N.Y. Nov. 2, 2012) ...................14

*Shukla v. Sharma*,
No. 07-CV-2972, 2009 U.S. Dist. LEXIS 90044 (E.D.N.Y. Aug. 14, 2009).................13, 14

*Stabler v. Congregation Emanu-El of N.Y.*,
No. 16-cv-09601, 2017 U.S. Dist. LEXIS 118964 (S.D.N.Y. July 28, 2017)................14, 15

*Starkman v. Evans*,
198 F.3d 173 (5th Cir. 1999) ...............................................................................................15

*Susu Wei v. Holder*,
314 F. App'x 404 (2d Cir. 2009) ..........................................................................................18

*Tomic v. Cath. Diocese of Peoria*,
442 F.3d 1036 (7th Cir. 2006) .............................................................................................15

*TianJie Chen v. Holder*,
365 F. App'x 252 (2d Cir. 2010) ..........................................................................................18

*Trs. of Empire State Carpenters Annuity v. Dykeman Carpentry, Inc.*,
No. 13-CV-1508, 2014 U.S. Dist. LEXIS 32251 (E.D.N.Y. Mar. 12, 2014).......................25

*United States v. Chaudhri*,
134 F.4th 166 (4th Cir. 2025) ................................................................................................9

*United States v. Kozminski*,
487 U.S. 931 (1988)...............................................................................................................7

*United States v. Manneh*,
645 F. Supp. 2d 98 (E.D.N.Y. 2008) ...................................................................................18

*United States v. Morales*,
No. 19-cr-03255, 2021 U.S. Dist. LEXIS 238114 (S.D. Cal. Dec. 13, 2021).....................14

*United States v. Raniere,*
384 F. Supp. 3d 282 (E.D.N.Y. 2019) ...............................................................11

*United States v. Rivera,*
799 F. 3d 180 (2d Cir. 2015)..............................................................................7

*United States v. Samaria,*
239 F.3d 228 (2d Cir. 2001)..............................................................................27

*United States v. Svoboda,*
347 F.3d 471 (2d Cir. 2003)..............................................................................27

*United States v. Thompson,*
896 F.3d 155 (2d Cir. 2018)..............................................................................13

*United States v. Toviave,*
761 F.3d 623 (6th Cir. 2014) ..........................................................................8, 9

*Vantone Grp. LLC v. Yangpu NGT Indus. Co.,*
No. 13-cv-07639, 2015 U.S. Dist. LEXIS 86653 (S.D.N.Y. July 2, 2015)....................20, 21

*Vengalattore v. Cornell Univ.,*
36 F.4th 87 (2d Cir. 2022) ...............................................................................2

*Williamson v. Recovery Ltd. P'ship,*
542 F.3d 43 (2d Cir. 2008)................................................................................25

*William Wrigley Jr. Co. v. Waters,*
890 F.2d 594 (2d Cir. 1989)..............................................................................25

*Wm. Passalacqua Builders v. Resnick Developers S.,*
933 F.2d 131 (2d Cir. 1991) .............................................................................24

*Zhang Jingrong v. Chinese Anti-Cult World All. Inc.,*
16 F.4th 47 (2nd Cir. 2021) ........................................................................16, 19

*Zhang Jingrong v. Chinese Anti-Cult World All.,*
311 F.Supp.3d 514 (E.D.N.Y. 2018) ..................................................................19

**Constitutions**

U.S. Const. Amend. I .................................................................................................19, 20, 21

**Statutes**

18 U.S.C. §§ 1581–1597............................................................................................. *passim*

18 U.S.C. § 1589................................................................................................4, 6, 7, 13

18 U.S.C. § 1590..................................................................................................4, 6, 22

18 U.S.C. § 1591..........................................................................................................13

18 U.S.C. § 1592..................................................................................................4, 22, 23

18 U.S.C. § 1594........................................................................................................4, 26

18 U.S.C. § 1595............................................................................................4, 13, 25, 26

18 U.S.C. § 2255...........................................................................................................4

42 U.S.C. §§2000bb–2000bb-4 ..................................................................................10

**Rules**

Fed. R. Civ. P. 8 ................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(1)....................................................................................1, 3, 4

Fed. R. Civ. P. 12(b)(6)................................................................................... *passim*

Fed. R. Civ. P. 12(d) .............................................................................................3

Fed. R. Evid. 201 ..................................................................................................3

**Legislative Materials**

Abolish Trafficking Reauthorization Act of 2022, Pub. L. No. 117–347, 136 Stat. 6199 (2023).....
...............................................................................................................................27

Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, 117 Stat. 2875
...............................................................................................................................12

H.R. Rep. No. 106-939 (2000).......................................................................................................7

Plaintiffs Zan Sun and Qing Ling Cheng submit this Memorandum of Law in Opposition to Defendants Shen Yun Performing Arts, Inc. ("Shen Yun"), Fei Tian College ("College"), Fei Tian Academy of the Arts ("Academy"), Dragon Springs Buddhist, Inc. ("Dragon Springs"), Hongzhi Li, and Rui Lee's ("Defendants") Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defs.' Mot. to Dismiss, Dkt. No. 37.

## I.    INTRODUCTION

This case concerns child labor and trafficking endured by Plaintiffs due to the acts of Shen Yun, a performance art and entertainment company, and affiliated individuals and entities. *See* Am. Compl., Dkt. No. 36 ("AC"). Masterminded by Li, Defendants together ran an elaborate labor trafficking organization out of their isolated and heavily guarded compound, Dragon Springs, situated in upstate New York. AC ¶¶22-33.

Defendants recruited children, including Plaintiffs, on the dubious premise that they would receive an "education" at their feeder schools. AC ¶¶24. They then isolated the children from the outside world, withheld their passports, subjected them to brutal, rigorous training, coerced them to perform through physical injuries without medical treatment, and humiliated them if they dared disobey. AC ¶¶50-65. All of this was in service of Defendants' cash cow: Shen Yun's world tours, which garnered millions in revenue. AC ¶¶22, 34.

Between 2008 and 2015, Plaintiffs served as child laborers for Defendants. AC ¶¶81-101, 110-136. They were forced to perform across the world on a rigorous schedule for very little money. AC ¶¶66-72. Sleep-deprived, in chronic pain, apprehensive of anyone beyond Defendants' bubble and fearing harm if they left, Plaintiffs acquiesced. AC ¶¶51-58. Years of coerced labor left Plaintiffs with indelible psychological, physical and financial scars. AC ¶¶138-140.

1

Defendants ask this Court to dismiss Plaintiffs' complaint by relying on a very different set of facts from those Plaintiffs allege. Far from accepting Plaintiffs' allegation as true, Defendants provide this Court with a slew of extraneous material irrelevant to a motion to dismiss. This sideways effort fails to establish any ground on which Plaintiffs' claims should be dismissed. Plaintiffs' claims are timely, and they plausibly allege the elements for their trafficking claims, including "serious harm." Plaintiffs' pleadings meet the requirements of Rule 8. Finally, Defendants are not entitled to any religious defenses at this stage, and do not qualify for the ministerial exception. Defendants' motion to dismiss should therefore be denied.

## II.    ARGUMENT

### A.    Standard

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Doe v. Franklin Square Union Free Sch. Dist.*, 100 F.4th 86, 94 (2d Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). In determining whether a claim is sufficiently plausible, a court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Doe*, 100 F.4th at 94 (citation omitted).

### B.    Defendants' extraneous facts are inappropriate on a motion to dismiss and should be disregarded

Defendants ignore the above standards and instead ask the Court to dismiss the AC based on their own facts. Their most egregious inclusions include purported letters from the IRS (the

2

"Exhibits"), Defs.' Mot. to Dismiss, Exs. A-B, Dkt. No. 37-2, and facts from websites including "Reason.com," "owaves.com" and "tabernaclechoir.org," to bolster their arguments (the "Websites"). Mot. 10, 14, 15. Defendants also attempt to shoehorn in facts gleaned from discovery in other cases decided between seven and twenty years prior to this lawsuit. Mot. 1-2.

A court adjudicating a 12(b)(6) motion to dismiss "may review only a narrow universe of materials," including "documents appended to the complaint or incorporated in the complaint by reference," matters upon which judicial notice may be taken, and documents that are "integral" to the complaint because "the complaint relies heavily upon its terms and effect." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citations omitted). If a court wishes to consider any other materials, a court must convert the motion to summary judgment and give all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

This Court should disregard Defendants' extraneous facts, including those from the Exhibits, Websites and other cases. IRS materials[1] have typically been subject to judicial notice only where publicly available and therefore "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see, e.g.*, *Ashland Glob. Holdings Inc. v. Valvoline, Inc.*, No. 21-cv-00498, 2022 U.S. Dist. LEXIS 13342, at *1 n.1 (S.D.N.Y. Jan. 25, 2022); *Anderson v. Greene*, No. 14-cv-10249, 2016 U.S. Dist. LEXIS 105671, at *57 n.13 (S.D.N.Y. Aug. 10, 2016). Even if the Court takes judicial notice of the Exhibits, they can be used for the fact of their existence but not for the truth of what they state. *Chiaramonte v. Animal Med. Ctr.*, No. 13-cv-05117, 2014 U.S. Dist. LEXIS 99930, at *12 (S.D.N.Y. July 22, 2014). Similarly, a court on a motion to dismiss may take judicial notice of other litigation, but only for the fact of their existence and not the truth of the matters asserted. *Ortiz v. Parkchester N.*

---

[1] Plaintiffs are not here conceding that the Exhibits are accurate or authentic.

3

*Condo.*, No. 16-cv-09646, 2018 U.S. Dist. LEXIS 100069, at *19-20 (S.D.N.Y. June 13, 2018). Since Defendants have cited facts in other cases and the Exhibits for the truth, they should be disregarded.

Finally, the facts Defendants present from the Websites, used to normalize Defendants' behavior (*see* Mot. 10 (trying to show that Plaintiffs' long hours were "not dissimilar" to those of other students); 14-15 (comparing Shen Yun to the Tabernacle Choir and Pope John Paul II's opposition to the Soviet Union)), should also be disregarded. The standards of a 12(b)(6) motion do not allow Defendants to import the Websites to try to dismiss the AC.

**C.    Defendants rely on the wrong statute of limitations and Plaintiffs' claims are well within time**

A claim may be dismissed under Fed. R. Civ. P. 12(b)(6) only if it is apparent on its face that it is untimely. *Michael Grecco Prods., Inc. v. RADesign, Inc.,* 112 F.4th 144, 149-50 (2d Cir. 2024) (citations omitted).

Defendants argue that Plaintiffs' claims are untimely under 18 U.S.C. § 2255, but Plaintiffs have not pleaded a *single* cause of action under that statute.[2]

Plaintiffs' claims instead rest on the Trafficking Victims Protection Reauthorization Act ("TVPRA"). 18 U.S.C. § 1595, the civil remedy prong of the TVPRA, allows a civil action for any violation of Chapter 77 of Title 18 of the U.S. Code (18 U.S.C. §§ 1581–1597), including 18 U.S.C. §§ 1589, 1590, 1592, and 1594, to be commenced "the later of—(1) 10 years after the cause of action arose; or (2) 10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense." 18 U.S.C. § 1595(c).

---

[2] Though Defendants call 18 U.S.C. § 2255 the "Trafficking Victims Protection Act," its actual title is the "Civil Remedy for Personal Injuries," and is included in an entirely different chapter of the U.S. Code. *See Le v. New Eng. Swimming*, No. 24CV11559, 2025 U.S. Dist. LEXIS 155786, at *4-7 (D. Mass. Aug. 12, 2025) (explaining that 18 U.S.C. § 2255 and § 1595 are two different paths to civil remedy for trafficking with different statutes of limitation).

The TVPRA covers a "continuing tort," such that "a single act occurring within the limitations period will preserve a claim based on all acts that were part of a single pattern." *Bensky v. Indyke*, 743 F. Supp. 3d 586, 602 (S.D.N.Y. 2024) (citing *Schneider v. Osg, LLC*, No. 22-CV-7686, 2024 U.S. Dist. LEXIS 55467, at *12 (E.D.N.Y. Mar. 27, 2024)).

Plaintiffs filed their complaint on April 18, 2025. Compl., Dkt. No. 15. Their limitations' period thus extends back to April 18, 2015. Plaintiffs allege that Sun and Cheng toured with Shen Yun until May 2015, and that Cheng labored in Defendants' costume factory until December 2015. AC ¶¶101, 122, 135-136. Plaintiffs further allege that their labor in preparation for and during Shen Yun's tour—labor which earned Defendants' millions of dollars—was central to Defendants' forced labor scheme. AC ¶¶50, 66. Plaintiffs specifically describe the scheme as a "cycle": "At the conclusion of each world tour, Shen Yun returned the child laborers to Dragon Springs where the cycle of Hongzhi Li's forced labor scheme began again." AC ¶73. Therefore, contrary to Defendants' argument that "nothing that happened to either Plaintiff in the spring of 2015 that could constitute a violation of the TVPRA" (Mot. 6), each day rehearsing at Dragons Springs or on tour, or in Cheng's case, working in the costume factory, was an act of forced labor that resulted from trafficking.[3]

Because Plaintiffs assert "a single act within the limitations period"—i.e., that they were both forced to labor for Defendants after April 18, 2015—all of the acts from their arrival at Dragon Springs (for Sun, from May 2008 and for Cheng, from 2010 (AC ¶¶81, 111)) constitute a "continuous tort" and are counted as within the limitations period. *Doe v. Gov't of United States V.I.*, 771 F. Supp. 3d 379, 399 (S.D.N.Y. 2025); *Bensky*, 743 F. Supp. 3d at 602.

---

[3] Defendants appear to focus on the physical injuries alleged in the AC, arguing without support that only physical injuries are considered an "act" for the purpose of the statute of limitations, disregarding the array of mental injuries they caused Plaintiffs for which the TVPRA allows damages. Mot. 7.

Furthermore, equitable tolling also applies here. Plaintiffs allege that they did not escape Defendants' control until well after they left Dragon Springs. After his expulsion, Sun worked at the Academy's Taiwan branch, sold tickets for Shen Yun in New Zealand, and worked for *Vision Times*, the Falun Gong and Li-controlled website, until March 2019. AC ¶¶103-104. Cheng sold tickets for Shen Yun in New Zealand and worked for *Vision Times* until 2018. (*Id.* ¶137.)

In *Schneider v. Osg, LLC*, the plaintiff spent 23-plus years as a member of a similar high control group, OSG, which required students to follow a "rigid set of rules" including complete obedience to the leaders' instructions "which covered every aspect of the students' personal lives." 2024 U.S. Dist. LEXIS 55467, at *4. The defendants in *Schneider* employed similar tactics to Defendants, such as sleep deprivation, humiliation, and forced labor. *Id*. at *4, 8-9, 14. Plaintiff left OSG on January 10, 2013, and sued under 18 U.S.C. §§ 1589 and 1590 on December 16, 2022. The court both applied the continuing tort theory to uphold plaintiff's TVPRA claims as timely and held that plaintiff's claims were timely on equitable tolling grounds because "OSG's hold over him prevented him from filing suit until he left the organization." *Id.* at *12 n.3 (citing *Hongxia Wang v. Enlander*, No. 17-cv-04932, 2018 U.S. Dist. LEXIS 37910, at *4 (S.D.N.Y. Mar. 6, 2018)). *Id.* In both *Schneider* and *Wang*, allegations that plaintiffs remained under the control of defendants until a later date were sufficient to toll the limitations period. *Schneider*, 2024 U.S. Dist. LEXIS 55467, at *12 n.3; *Wang*, 2018 U.S. Dist. LEXIS 37910, at *11-12. Therefore, equitable tolling applies until the dates Sun and Cheng escaped Defendants' control and Plaintiffs' TVPRA claims are timely under this theory as well.

## D.   Plaintiffs plausibly allege multiple forms of actual and threatened serious physical and psychological harm sufficient to sustain a trafficking claim

Defendants argue that Plaintiffs fail to allege serious harm sufficient for a TVPRA claim. Mot. 7-12. Defendants misinterpret the law, and attempt to recast the serious harm alleged using facts outside the AC.

Congress passed the current version of 18 U.S.C. § 1589 in response to the Supreme Court's decision in *United States v. Kozminski*, which held that the previous forced labor statute necessarily required a prosecutor to prove physical restraint or harm, or coercion through legal process or law. 487 U.S. 931, 952 (1988); *Paguirigan v. Prompt Nursing Emp't Agency LLC*, 286 F. Supp. 3d 430, 437-38 (E.D.N.Y. 2017). Specifically, it widened the definition of "serious harm" to include "psychological, financial or reputational harm." 18 U.S.C. § 1589(c)(2); *see* H.R. Rep. No. 106-939, at 101 (2000). "Serious harm" is assessed by a "hybrid" standard: the court should both "consider the particular vulnerabilities of a person in the victim's position" and consider whether the victim's "acquiescence [was] objectively reasonable under the circumstances." *Muchira v. Al-Rawaf*, 850 F.3d 605, 618 (4th Cir. 2017) (citing *United States v. Rivera*, 799 F.3d 180, 186-87 (2d Cir. 2015)).

Plaintiffs more than sufficiently allege "serious harm." The AC alleges that Defendants subjected Plaintiffs to abuse, humiliation and violence. AC ¶¶52, 62-65, 70-71, 79, 99, 113-114, 123, 134. Defendants deprived Plaintiffs of sleep, denied them medical treatment for injuries sustained during Defendants' extreme training and performance regimes, and severely overworked them on worldwide tours. *Id.* ¶¶51, 53, 67, 69, 82-83, 92-97, 112, 126-133. Defendants restricted Plaintiffs from leaving both the Dragon Springs compound and the tours both physically and psychologically, withholding their passports and threatening dire consequences if they left. *Id.* ¶¶54-56, 64, 81, 87, 98, 111, 125. Defendants blocked Plaintiffs' access to the outside world—which they already knew little of as foreign children stuck in an isolated compound in rural New

7

York—and required them to give their parents sunny reports. *Id.* ¶¶55, 57-59, 65, 100. Defendants mandated strict obedience to Li's whims, and told Plaintiffs repeatedly that defying him would result in "the loss of his purported protection, rejection from the Falun Gong community, physical harm, or even death." *Id.* ¶¶60, 66. Looked at all together, and considering Plaintiffs' particular vulnerabilities as foreign children, these facts are sufficient to allege serious harm. *See Schneider*, 2024 U.S. Dist. LEXIS 55467, at *15-18 (where defendant maintained standard practice of shaming disobedient students and ostracizing those who left, and where plaintiff feared physical harm, "serious harm" is plausibly alleged); *Abafita v. Aldukhan*, No. 16-cv-06072, 2019 U.S. Dist. LEXIS 59316, at *13-14 (S.D.N.Y. Apr. 4, 2019) (serious harm demonstrated where defendants required plaintiff to work long hours, withheld her passport, reprimanded her for speaking with outsiders, prohibited medical care, and threatened her against disobeying orders); *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1164 (D. Kan. 2018) (allegations of, *e.g.*, defendants' humiliating and degrading treatment, physical and emotional abuse, denial of medical care, strict discipline system, and intimidation of child beginning at age 11 sufficient for serious harm).

Defendants' attempt to recast the serious harm using their own facts fails. First, they portray the entire scheme as a mere "elite dance academy" and "boarding school," with Defendants acting in *loco parentis*. Mot. 9-10. The details about other schools are gleaned from the Websites and should be ignored. Even if it is true that Plaintiffs sought admission to Defendants' schools voluntarily, the TVPRA is broad enough to encompass situations in which coercion is subtle and the plaintiffs are not "kept under literal lock and key." *Franco v. Diaz*, 51 F. Supp. 3d 235, 247 (E.D.N.Y. 2014). As for the *loco parentis* arguments, the out-of-circuit case Defendants rely on, *United States v. Toviave*, discusses "household chores," including washing the floors, windows and bathrooms, and doing dishes and laundry, much less onerous than demands placed on

Plaintiffs. 761 F.3d 623, 625 (6th Cir. 2014). In any event, the Sixth Circuit's holding rested on the fact that a parent's right to make their children do chores had been "codified in Michigan"—an integral part of its reasoning not applicable here. *Id.*; *United States v. Chaudhri*, 134 F.4th 166, 178 (4th Cir. 2025) (refusing to extend *Toviave*'s "narrow" holding because "Toviave had a legal parental right *in Michigan* to require the children to perform chores") (emphasis added).

Even following *Toviave*, the household chores described there are entirely distinguishable from forcing children to train at least six days a week, 12-plus hours a day to prepare them to perform on a world tour for over six months—for minimal pay—while Defendants reaped benefits in the hundreds of millions. The discipline Defendants imposed on Plaintiffs was not, as Defendants argue, a simple regulation of, e.g., internet surfing habits, but a substantial scheme of isolation and fearmongering. Even if Defendants were acting *in loco parentis*—a fact Plaintiffs neither allege nor concede here, particularly when Sun became an adult—"[t]he forced labor statute contains no exception for parents or other close relatives," and one "is not immunized by that status." *Chaudhri*, 134 F.4th at 178 (citing *Toviave*, 761 F.3d at 626).

Defendants then miscast "serious harm" as *merely* "religious harm," which they claim, without support, makes it exempt from this Court's consideration. Mot. 9-12. Defendants overstate the AC's allegations regarding religion; Plaintiffs' stray references to "fate" and "hell" by no means make the "serious harm" religious and therefore beyond this Court's consideration. *Schneider*, 2024 U.S. Dist. LEXIS 55467, at *17-18 (court is bound by the complaint's allegations regarding, e.g., public reprimand, ostracization and physical retaliation, and not defendants' self-serving statements about spiritual benefit).

The First Amendment is implicated solely "where resolution of the dispute will require the Court or a jury to choose between competing religious views or interpretations of church doctrine

9

or dogma in order to resolve the dispute." *Brandenburg v. Greek Orthodox Archdiocese of N. Am.*, No. 20-cv-03809, 2023 U.S. Dist. LEXIS 30574, at *34-35 (S.D.N.Y. Feb. 23, 2023). Moreover, the Second Circuit has held that "secular components of a dispute involving religious parties are not insulated from judicial review," as long as a court follows the 'neutral principles of law' approach." *Belya v. Kapral*, 45 F.4th 621, 630 (2d Cir. 2022). Whether or not Defendants violated the TVPRA can be adjudicated according to "neutral principles of law" without impermissible religious interference. As such, Defendants' attempts to shield their coercive conduct under the First Amendment fail.

Further, as described below, whether Defendants are religious organizations entitled to protections under either the First Amendment or, as Defendants cursorily suggest, the Religious Freedom Restoration Act, 42 U.S.C. §§2000bb–2000bb-4 ("RFRA"), is a question of fact. Indeed, Defendants raise these arguments only in "conclusory" assertions, thereby waiving them. *See Citibank, N.A. v. Hello Flatbush LLC*, No. 23-cv-10920, 2025 U.S. Dist. LEXIS 157574, at *24-25 (S.D.N.Y. Aug. 14, 2025) (arguments that are "conclusory, undeveloped, and presented without argument," are waived); *Penske Media Corp. v. Shutterstock, Inc.*, 548 F. Supp. 3d 370, 381 (S.D.N.Y. 2021). Even if not waived, the Second Circuit is skeptical that a RFRA defense even applies in suits like this one between private parties, given the statute's plain text. *See Rweyemamu v. Cote,* 520 F.3d 198, 203 & n.2 (2d Cir. 2008), *abrogated on other grounds by Jusino v. Fed'n of Cath. Teachers*, 54 F.4th 95, 104 (2d Cir. 2022).

Finally, Defendants rely heavily on another out of circuit case, *Headley*. Mot. 8-9 (citing *Headley v. Church of Scientology Int'l*, No. CV 09-3986, 2010 U.S. Dist. LEXIS 84869 (C.D. Cal. Aug. 5, 2010), *aff'd*, 687 F.3d 1173 (9th Cir. 2021)). But *Headley* was decided on summary judgment, concerned adults, and did not allege the multiple adverse consequences that Plaintiffs

10

allege here. *See United States v. Raniere*, 384 F. Supp. 3d 282, 313-14 (E.D.N.Y. 2019) (declining to apply Ninth Circuit *Headley* because it is "not binding on this court, . . . and is easily distinguishable because the plaintiffs in that case faced only one potential adverse consequence: excommunication from the Church of Scientology"). Plaintiffs' claims, which rest on multiple allegations of "serious harm" enacted upon vulnerable children, is entirely distinguishable.

**E.    Defendants' First Amendment affirmative defense is not supported by either facts or law**

Defendants argue that the "ministerial exception," recognized by the Supreme Court in *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171 (2012), bars Plaintiffs' claims. Mot. 12-16. The ministerial exception is an affirmative defense available to religious organizations in certain employment disputes pertaining to "ministers." *Id.* at 194-95 & n.4. Because the ministerial exception does not apply to TVPRA claims and because there is at least a factual dispute about whether Defendants are religious organizations and Plaintiffs are ministers, Defendants' affirmative defense on this ground fails.

**1.    <u>The ministerial exception does not apply to TVPRA claims</u>**

The ministerial exception protects religious organizations from challenge on hiring and firing decisions about religious ministers. *Penn v. N.Y. Methodist Hosp.*, 884 F.3d 416, 423 (2d Cir. 2018). It allows religious organizations autonomy over "the authority to select and control who will minister to the faithful"—a "strictly ecclesiastical" decision that falls outside permissible judicial regulation under the First Amendment. *Id.* (citing *Hosanna-Tabor*, 565 U.S. at 194-95).

*Hosanna-Tabor* concerned itself solely with employment discrimination. *Id.* at 196 (declining to determine "whether the exception bars other types of suits, including actions by employees alleging breach of contract or tortious conduct by their religious employers"); *see also Our Lady of Guadalupe Sch. v. Morrissey-Berru,* 591 U.S. 732, 747 (2020) ("[W]e unanimously

11

recognized that the Religion Clauses foreclose certain *employment discrimination claims* brought against religious organizations." (emphasis added)). Its rationale was that "[r]equiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so . . . interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs." *Hosanna-Tabor*, 565 U.S. at 188. Doing so would violate both the Free Exercise and Establishment clauses. *Id.* at 188-89.

*Hosanna-Tabor*, however, does not stand for the proposition that *every* act made by a purported religious body falls outside judicial scrutiny. *See Our Lady*, 591 U.S. at 746 (ministerial exception "does not mean that religious institutions enjoy a general immunity from secular laws"); *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 706 n.1 (2020) (Kagan, J., concurring) ("[T]here is no general constitutional immunity, over and above the ministerial exception, that can protect a religious institution from the law's operation."). Indeed, federal courts are split even on whether the ministerial exception applies to all employment disputes, or just employment discrimination disputes. *See*, *e.g., Brandenburg v. Greek Orthodox Archdiocese of N. Am.*, No. 20-cv-03809, 2021 U.S. Dist. LEXIS 102800, at *11-13 (S.D.N.Y. June 1, 2021) (collecting cases and assuming without deciding that the ministerial exception does not bar hostile work environment claims); *Orr v. Christian Bros. High Sch.*, No. 21-15109, 2021 U.S. App. LEXIS 34810, at *4 (9th Cir. Nov. 23, 2021) (ministerial exception does not apply to harassment claims that are not inseparable from the employment claims).

Plaintiffs' claims are not employment disputes. Plaintiffs' claims sound in violations of the TVPRA, which protects victims of human trafficking. Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, 117 Stat. 2875. The ministerial exception does not extend to such claims, and the sole authority Defendants cite to the contrary is an out-of-circuit

12

district court decision in *Headley*—despite the fact that the Ninth Circuit, on appeal, explicitly declined to rule on whether the ministerial exception barred TVPRA claims. *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1181 (9th Cir. 2012).

By contrast, the Second Circuit in *United States v. Thompson* had "little difficulty" in concluding that 18 U.S.C. § 1591, the anti-sex trafficking statute, did not implicate the ministerial exception. 896 F.3d 155, 166 (2d Cir. 2018). Cautioning against overstating *Hosana-Tabor*'s significance, the court ruled that "government regulation of only outward physical acts" was permissible and clearly distinguishable from interference with ecclesiastical decisions. *Id*. Similarly, the E.D.N.Y. held in *Shukla v. Sharma* that claims under 15 U.S.C. §§ 1589 and 1595— the same statutes Plaintiffs rely on here—fell outside of the ministerial exception, reasoning that "the standards that govern what constitutes trafficking and forced labor do not depend on the interpretation of religious doctrine; rather they are secular standards that guarantee that employers cannot deprive employees of fundamental human rights." No. 07-CV-2972, 2009 U.S. Dist. LEXIS 90044, at *21-23 (E.D.N.Y. Aug. 14, 2009). Although *Shukla* was decided prior to *Hosanna-Tabor* and *Our Lady*, its reasoning—that the TVPRA "does not require courts to unduly interfere with the internal affairs of religious organizations or get involved in the selection or retention of ministers," *id.* at *21—is consistent with the underlying rationale behind those two decisions, and the Second Circuit's in *Thompson*. To credit Defendants' affirmative defense here would be to allow organizations deeming themselves "religions" to commit human trafficking—a federal crime—with total immunity.

As the court noted in *Shukla*, the "the type of abuse addressed by the [TVPRA] is so extreme, offensive, and contrary to fundamental human rights as to distinguish it from the type of conduct that ordinarily gives rise to violations of labor and employment laws." *Shukla*, at *23

13

(citation modified). The TVPRA's goal of "eradic[ating] modern day slavery" is distinct from violations of labor and employment laws: "[g]iven the relative magnitude of the deprivation of individual liberty in cases covered by the [TVPRA], and the international scope and significance of human trafficking," it is clear that the TVPRA "transcends the boundaries of the ministerial exception." *Id.* at *22-23; *see also United States v. Morales,* No. 19-cr-03255, 2021 U.S. Dist. LEXIS 238114, at *23-24 (S.D. Cal. Dec. 13, 2021).

    **2.**    **Factual disputes over Plaintiffs' status as ministers and Defendants' status as religious organizations preclude dismissal**

Even if the ministerial exception *did* apply to TVPRA claims, Defendants must still establish that (i) Plaintiffs are ministers; and (ii) Defendants are religious organizations. *Brandenburg*, 2021 U.S. Dist. LEXIS 102800, at *9 (citing *Hosanna-Tabor*, 565 U.S. at 188-89).

"A defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion only if the defense appears on the face of the complaint." *Lateral Recovery, LLC v. Capital Merch. Servs., LLC*, 632 F. Supp. 3d 402, 446 (S.D.N.Y. 2022) (citation modified). A court may only consider facts from the face of the pleading and documents incorporated therein, *id.*, and cannot rely on "unproven, highly fact specific arguments" to establish an affirmative defense. *Levine v. AtriCure, Inc.*, 594 F. Supp. 2d 471, 476 (S.D.N.Y. 2009). When there is a dispute of fact as to the defenses' elements, a motion to dismiss must be denied. *Shiner v. State Univ. of N.Y.*, No. 11-CV-01024, 2012 U.S. Dist. LEXIS 157728, at *14 (W.D.N.Y. Nov. 2, 2012). Because of the fact-intensive inquiry mandated by the ministerial exception, dismissal prior to discovery is rare. *See, e.g.*, *Stabler v. Congregation Emanu-El of N.Y.,* No. 16-cv-09601, 2017 U.S. Dist. LEXIS 118964, at *18-19 (S.D.N.Y. July 28, 2017) (citing *Cannata v. Cath. Diocese of Austin*, 700 F.3d 169, 172 n.3 (5th Cir. 2012) ("Given the nature of the ministerial exception, we suspect that only in the rarest of circumstances would dismissal under rule 12(b)(6)—in other words, based solely on the

pleadings—be warranted"); *Califano v. Roman Cath. Diocese of Rockville Ctr.*, 751 F. Supp. 3d 42, 53 (E.D.N.Y. 2024) (resolution on motion to dismiss "inappropriate" because case law "shows that the question of application of the ministerial exception is fact specific").

*Defendants fail to establish that Plaintiffs are ministers*

Whether a plaintiff is a minister is a "flexible and fact-specific" inquiry. *Brandenburg*, 2021 U.S. Dist. LEXIS 102800, at *10. In *Hosanna-Tabor*, the Supreme Court considered both the plaintiff's formal title and her substantive role and responsibilities. 565 U.S. at 192. "What matters, at bottom, is what an employee does." *Our Lady*, 591 U.S. at 753.

First, Plaintiffs do not allege that they were Defendants' employees. Plaintiffs were students who were trained in dance, and coerced into labor for the Shen Yun world tour in return for meagre payment. AC ¶¶50-52, 66-70, 72. Sun received small, irregular and sporadic payments, while Cheng was paid about $400 a month for hundreds of hours of labor and told she was lucky to be paid at all. AC ¶¶90-91, 120. Plaintiffs were child laborers, not employees, nor ministers.

The ministerial exception protects a religious organization's ability to make *employment* decisions. *See Hosanna-Tabor*, 565 U.S. at 176; *Our Lady,* 591 U.S. at 754 ("the [ministerial] exception should include any *employee* who leads a religious organization, conducts worship services or important religious ceremonies or rituals, or serves as a messenger or teacher of its faith." (citation modified)). In each case cited by Defendants—where certain performers and teachers were considered "ministers"—the plaintiffs were employed by defendants, making these cases inapposite here. *See, e.g., Alicea–Hernandez v. Cath. Bishop of Chi.,* 320 F.3d 698, 704 (7th Cir. 2003) (employed as "Hispanic Communications Manager"); *EEOC v. Roman Cath. Diocese*, 213 F.3d 795, 797-98 (4th Cir. 2000) (employed as choir director); *Tomic v. Cath. Diocese of Peoria*, 442 F.3d 1036, 1037 (7th Cir. 2006) (hired as music director and organist); *Starkman v. Evans*, 198 F.3d 173, 174 (5th Cir. 1999) (employed as choirmaster and music director); and

15

*Martin v. SS Columba-Brigid Cath. Church*, No. CV 21-0491, 2022 U.S. Dist. LEXIS 144616, at *4 (W.D.N.Y. Aug. 11, 2022) (employed as choir director).[4] Extending the ministerial exception to cover how a religious organization treats non-employees—here, trafficked children—would be to award religious organizations a blanket immunity from civil law which courts have repeatedly cautioned against.

Further, Plaintiffs do not allege that they performed religious functions or held any religious titles. *See generally* AC. To be sure, Plaintiffs' paltry education at the College and Academy included Falun Gong exercises and study. *See, e.g.*, AC ¶¶82. However, their main responsibility was to prepare for and perform on the Shen Yun world tour, which, as Plaintiffs allege, was secular, cultural entertainment with at best a political message about Falun Gong's persecution by the CCP. *See infra*, 17-19. Despite Defendants' exhortations about, e.g., Catholic opposition to communism, Mot. 15, in the very case they cite, *Zhang Jingrong v. Chinese Anti-Cult World All. Inc.*, the Second Circuit held that tables where sympathizers raised political awareness about Falun Gong's persecution—regardless of its religious status—were not sites of religious practice. 16 F.4th 47, 60 (2nd Cir. 2021). Even though "practitioners who staffed the tables engaged in prayer and promoting [the "law" of Falun Gong]," the court held that the tables were "primarily [a] site for political protest activity against the [CCP], even if some incidental religious practice took place at the tables." *Id.* at 47, 52, 60. Under this same logic, Plaintiffs' performances on the Shen Yun world tour—promoting Chinese culture and criticizing CCP persecution of Falun Gong—were primarily cultural and political, not an activity that would render them ministers under the ministerial exception.

---

[4] And indeed, most are out-of-circuit and predate the test laid out in *Hosanna-Tabor* and *Our Lady*, minimizing their usefulness otherwise in analyzing whether Plaintiffs are ministers.

*Defendants fail to establish they are religious organizations*

To invoke the protections of the ministerial exception, Defendants must establish they are "religious groups." The Second Circuit has determined that a religious group is "marked by clear or obvious religious characteristics." *Penn v. N.Y. Methodist Hosp.*, 884 F.3d 416, 424 (2d Cir. 2018) (citations omitted).

Defendants' self-characterization morphs opportunistically. On its website, Shen Yun publicly promotes itself as a "premier classical Chinese dance and music company," with a "mission . . . to revive traditional Chinese culture, the same heritage of five millennia that the Chinese Communist Party (CCP) has spent a century trying to destroy." AC ¶42. Its primary product is "cultural entertainment," including classical Chinese dance, music and costumes depicted against a backdrop of ancient Chinese history and folklore. AC ¶37. On its own website, it emphasizes: "Shen Yun is a performing arts company, not a religion." AC ¶22.

In other words, Shen Yun "holds itself out to the public as secular" and produces a "secular product," two factors weighing against its religious status. *Aparicio v. Christian Union, Inc.*, No. 18-cv-00592, 2019 U.S. Dist. LEXIS 55938, at *11-12 (S.D.N.Y. Mar. 29, 2019). To the extent Shen Yun performances contain targeted messaging, they are political: "glorifying China before communism, demonizing the ruling [CCP], and portraying Falun Gong practitioners as a persecuted community." AC ¶43. Similarly, the College and Academy, whose predominant purpose is to train child laborers for their Shen Yun performances, are feeder schools for Shen Yun's money-making operation, hosted at Dragon Springs.

Defendants argue that despite the above, Shen Yun is religious because it is a "ministry" of Falun Gong, Dragon Springs is a "church," and that the College and the Academy are religious Falun Gong schools.[5] Mot. 14.

Plaintiffs, by contrast, allege that Falun Gong is a movement espousing self-improvement, meditation and opposition to the CCP. AC ¶38. Li, Falun Gong's founder, has repeatedly asserted that Falun Gong is not a religion. AC ¶39. In other lawsuits in Korea, Shen Yun has asserted that it is not associated with Falun Gong, which it additionally claims is not a religion. AC ¶46. On social media platforms, high-level practitioners have declared it a "misconception" that Shen Yun "is the same thing as Falun Gong" and that, far from being a religious organization, Shen Yun was "a performing arts company with a mission of reviving 5,000 years of traditional Chinese culture." AC ¶46. The Second Circuit has taken note of Falun Gong's contradictory self-presentations in other contexts. *Susu Wei v. Holder*, 314 F. App'x 404, 405 (2d Cir. 2009); *Gao v. Gonzales*, 424 F.3d 122, 125 (2d Cir. 2005); *TianJie Chen v. Holder*, 365 F. App'x 252, 253–54 (2d Cir. 2010).

Not only, therefore, are Defendants *not* marked by "clear and obvious religious characteristics" entitling them to the protections of the ministerial exception, but Shen Yun and Falun Gong's history of contradictory statements demonstrates insincerity. Courts have long held that for a religious belief to be protected, it must be sincere, *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984), rather than "self-serving." *Kravitz v. Purcell*, 87 F.4th 111, 127 (2d Cir. 2023). Courts "have a duty to determine whether what is professed to be religion is being asserted in good faith." *United States v. Manneh*, 645 F. Supp. 2d 98, 112 (E.D.N.Y. 2008). Defendants'

---

[5] Note that the individual defendants, Li and Lee, cannot invoke the protections of the ministerial exception. *Demkovich v. St. Andrew the Apostle Par.*, 3 F.4th 968, 982 (7th Cir. 2021) ("the protection of the ministerial exception inures to the religious organizations, not to the individuals within them.")

18

contradictory representations in multiple forums about their religious status and affiliation with Falun Gong lead to at least a dispute of fact as to the sincerity of their self-characterization.

Defendants' primary counterargument is from *Zhang Jingrong v. Chinese Anti-Cult World All.*, 311 F.Supp.3d 514, 559 (E.D.N.Y. 2018), *rev'd on other grounds* 16 F.4th 47 (2d Cir. 2021). Rather than citing the AC, which must be taken as true, Defendants ground their factual analysis of Falun Gong's religious status in the *Zhang* court's findings and conclusions. *See, e.g.,* Mot. 10-11. However, the Eastern District clearly limited its holding "for only purposes of standing and applicable substantive law *in the present case*" and held that Falun Gong was a religion "for the purposes of *this* litigation." *Zhang*, 311 F. Supp. 3d at 522 (emphasis added). The case did not concern the ministerial exception, nor did the court, despite acknowledging that Li did not call Falun Gong a religion and its adherents deny it is a religion, go into a sincerity analysis. *Id.* at 525. Further, the court's decision—on a motion for summary judgment—rested on factual discovery, as well as three separate expert reports on Chinese history, culture and politics. *Id.* at 526-531. As such, it would be unduly prejudicial to Plaintiffs to dismiss their claims based on facts and evidence presented in another case they had neither access to nor opportunity to review and challenge. Finally, *Zhang* did not address the religious status of any Defendant in this action. Even if the Court adopted its analysis as it pertained to Falun Gong, as argued above, Defendants have not met their burden on a motion to dismiss of establishing that their connection to Falun Gong marks them with the clear and obvious characteristics of a religious group.

Beyond *Zhang*, Defendants' attempt to explain away their history of contradictory self-representation is in large part sourced from extraneous materials such as the Exhibits (which as discussed above should be disregarded). But all this establishes is that Plaintiffs are correct: there is at least a dispute of fact about Defendants' religious status, which makes dismissal inappropriate.

19

**F.      Plaintiffs' detailed Amended Complaint gives Defendants fair notice for the bases of their claims and is therefore sufficient under Rule 8**

Defendants allege that the AC improperly groups all Defendants together and therefore warrants dismissal under Rule 8. Fed. R. Civ. P. 8; Mot. 16-17.

A complaint is sufficient under Rule 8 when it "gives defendants fair notice of the basis for Plaintiffs' claims." *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 144 (S.D.N.Y. 2014) (citation modified). Rule 8 does not prohibit "collective allegations against multiple defendants" as long as each defendant is put on fair notice of "what they allegedly did or did not do." *Howard v. Mun. Credit Union*, No. 05-cv-07488, 2008 U.S. Dist. LEXIS 124085, at *40 (S.D.N.Y. Jan. 24, 2008) (citation modified); *see also Hudak v. Berkley Grp., Inc.*, No. 13-CV-00089, 2014 U.S. Dist. LEXIS 8168, at *10-11 (D. Conn. Jan. 23, 2014) ("Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant.").

Plaintiffs have explained the role of each Defendant in the forced labor scheme. *See* AC ¶¶13-21 (explaining relationships between Defendants); ¶¶22-33 (explaining the forced labor scheme's operation, led by Li and Lee); ¶¶141-204 (specifying which counts are brought against which Defendants and on what bases). Plaintiffs further allege that there is little to no distinction between the institutional Defendants, who act "as a single integrated enterprise with no arm's length relationship between or among them." AC ¶¶31-33. Given this, Plaintiffs "refer . . . to the action of 'Defendants' as a collective whole—a unified commercial enterprise to exploit child labor and traffic young children, including Plaintiffs, operated by [Li]." AC ¶¶31-33.

At this preliminary stage, Plaintiffs are not required to plead with more particularity, especially when key facts regarding inter-Defendant relationships are under Defendants' exclusive control. *Vantone Grp. LLC v. Yangpu NGT Indus. Co.*, No. 13-cv-07639, 2015 U.S. Dist. LEXIS

20

86653, at \*14 (S.D.N.Y. July 2, 2015) ("prior to discovery, plaintiff need not explain the details of each defendant's role in the planning, funding, and executing of defendant's alleged joint scheme.") (citation modified). Defendants ask for exactly the sort of detailed elaboration that this court has already deemed unnecessary to meet Rule 8. *Id.*

Defendants further argue that the AC's inclusion of two allegations "on information and belief" constitute "unacceptable reliance" on the phrase. Mot. 18. But merely adding the "standard pleading qualification" of "on information and belief" to allegations "does not eviscerate the sufficiency of a complaint." *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings*, LLC, 23 F. Supp. 3d 344, 355 (S.D.N.Y. 2014). "A district court should not dismiss a claim unless it is satisfied that the complaint cannot state any set of facts that would entitle the plaintiff to relief." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (citation modified).

Dismissal under Rule 8 is only warranted when a complaint is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). A complaint that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," is sufficient to resist dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The AC more than clears this bar.

Defendants also argue that Plaintiffs' claims fail to meet their burden under Rule 8 because they provide "no support" for their factual allegations and "no . . . verification or substantiation." Mot. 18. Not so. Plaintiffs have provided a detailed allegations as to how Defendants operated, how Defendants treated child laborers including Plaintiffs, the relationship among the Defendants, and the specifics of Plaintiffs' experiences. *See generally* AC. These allegations clearly establish claims that are plausible on their face.

21

Plaintiffs are "not required to plead specific evidence or extra facts beyond what is needed to make the claim plausible." *New York v. Town of Clarkstown*, 95 F. Supp. 3d 660, 681 (S.D.N.Y. 2015) (citation omitted). A plaintiff's factual allegations need not be "detailed," but merely "enough to raise a right to relief above the speculative level." *Arista Records LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010) (internal citations omitted). If a plaintiff pleads sufficient factual allegations to state a claim, these can be further developed in discovery. *See, e.g., Morass v. White*, 571 F. Supp. 3d 77, 103-04 (S.D.N.Y. 2021) (finding allegations pleaded on information and belief sufficient where the plaintiff's "overall factual allegations" provided a factual basis for the assertion pleaded; additional supporting facts "will be developed in discovery"); *Arista Records*, 604 F.3d at 120 (complaint sufficient when its factual allegations raise "reasonable expectation that discovery will reveal evidence of illegality").

Given that Plaintiffs plead sufficient factual allegations to make their claims plausible on their face against each Defendant, dismissal under Rule 8 is unwarranted.

**G.   Plaintiffs have sufficiently pleaded their document seizure, vicarious liability, beneficiary liability and attempt and conspiracy TVPRA claims**

**1.   <u>Under the totality of the circumstances, Plaintiffs have sufficiently alleged document seizure</u>**

To allege a claim of document servitude, Plaintiffs must allege that Defendants "knowingly . . . confiscates or possesses any actual . . . passport" in the course of violating, or with intent to violate, § 1590. 18 U.S.C. §§ 1590, 1592(a). Notably, the seizure does not have to be "forced," contrary to what Defendants state in their subheading. Mot. 19.

Plaintiffs' allegations that Defendants collected their passports, locked them in a safe, prevented Plaintiffs from leaving (even as adults) without Defendants' permission, and resisted returning passports to laborers as part of the scheme to force them to stay, are sufficient. AC ¶¶54,

67, 81, 87, 111, 125. The cases Defendants cite are inapt or distinguishable. The Fourth Circuit in *Cruz v. Maypa* concerned a statute of limitations question and did not consider claims for document seizure specifically, though, like the case at bar, it did account for the plaintiff's vulnerable position while considering her trafficking claims. 773 F.3d 138, 143-46 (4th Cir. 2014). *Muchira*, unlike the case at bar, concerned "not an especially vulnerable victim"—not "young" or "inexperienced"—who had an "unobstructed ability to walk away at any time," and who had "unfettered access to a private cell phone and to the Internet." 850 F.3d at 620-621. The facts in *Muchira*, gleaned through discovery, are the opposite of Plaintiffs' alleged experiences. Defendants assert numerous facts not alleged in the AC to justify their actions as "routine," but as noted above, factual disputes merely preclude dismissal as premature.

Under the "totality of the circumstances"—Defendants made the children fearful of leaving, blocked access to the internet, and threatened them should they disobey—coupled with withholding their passports, Plaintiffs plausibly allege a cognizable document servitude claim. *Saraswat v. Jayaraman*, No. 15-CV-4680, 2016 U.S. Dist. LEXIS 133573, at \*20 (E.D.N.Y. Sep. 28, 2016) (citing *Guobadia v. Iowa*, 103 F. Supp. 3d 325, 335-336 (E.D.N.Y. 2015)); *see also Franco v. Diaz,* 51 F. Supp. 3d 235, 247 (E.D.N.Y. 2014) (possession of plaintiff's passport under false pretenses sufficient to state a claim under section 1592(a)).

**2.** **Plaintiffs' vicarious liability and alter ego claims are adequately pleaded**

Defendants argue that Plaintiffs' vicarious liability claims against Shen Yun (Counts II and V) fail because they are based only on "conclusory allegations of control and agency." Mot. 21. Defendants ignore the detailed allegations regarding the relationship between Li and Shen Yun sufficient to support multiple theories of vicarious liability. Here, Plaintiffs have made out a claim that Li, Shen Yun's agent, had actual and/or apparent authority to act on its behalf. *Minskoff v. Am.*

*Express Travel Related Servs. Co*., 98 F.3d 703, 708 (2d Cir. 1996). To support an agency theory of liability, the AC sets forth how, as founder and leader of Shen Yun, Li controlled, directed, and managed the minutiae of Shen Yun, such as hand-selecting employees and dancers in each tour group, and requiring reports on any dancers' errors after every performance. AC ¶¶1, 4, 18, 21-23, 70, 75, 109, 135. Moreover, Plaintiffs clearly allege that Li controls the Academy, the College, and Dragon Springs, and that all of these organizations act in concert as a "single integrated enterprise" with "substantially identical management." AC ¶¶30-33. This is more than sufficient to withstand dismissal.

Plaintiffs also sufficiently plead an alter ego theory of vicarious liability. Seeking to hold Shen Yun responsible for the acts of Li under an alter ego theory is known as reverse-veil-piercing. *Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, 714 F. Supp. 3d 416, 440 (S.D.N.Y. 2024). Not limited to legal owners, reverse-veil-piercing allows a court to hold an organization liable for an individual's actions if they exercise sufficient control and use that control to commit a fraud or wrong. *Id*. (citing *Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A*., 270 F. Supp. 3d 716, 733 (S.D.N.Y. 2017)). To demonstrate control, the court can consider factors including the absence of corporate formalities, comingling of funds for personal purposes, overlap in ownership, officers, directors, and personnel, common office space or property, lack of independent business discretion or arm's length dealings and treatment of corporations as independent profit centers. *Wm. Passalacqua Builders v. Resnick Developers S*., 933 F.2d 131, 139 (2d Cir. 1991). Contrary to Defendants' presentation of the law, there is no rule as to how many factors must be present and "[i]nstead of a firm rule, the general principle guiding courts in determining whether to pierce the corporate veil 'has been that liability is imposed when doing so

24

would achieve an equitable result.'" *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 53 (2d Cir. 2008) (citing *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 601 (2d Cir. 1989)).

Plaintiffs plead most of the above factors to demonstrate that Li controlled Shen Yun. *See, e.g.,* AC ¶¶20 (absence of formalities); 35 (use by Li of Defendants' funds); 18-19, 30-31 (overlap in officers and personnel); 31 (same address for all Defendants); 30 (no business discretion or arms' lengths dealings as only Li's decision-making counts). To the extent any are pleaded summarily or "on information and belief," that is because such information is uniquely in the control of Defendants, and *not* the children who were forced to labor for them. District courts in the Second Circuit have held that in the alter ego context, such pleading passes muster under *Iqbal* and *Twombly. See Trs. of Empire State Carpenters Annuity v. Dykeman Carpentry, Inc.*, No. 13-CV-1508, 2014 U.S. Dist. LEXIS 32251, at *13-14 (E.D.N.Y. Mar. 12, 2014) (collecting cases). Plaintiffs also meet the second prong for alter ego by demonstrating that Li used Shen Yun to perpetrate a wrong, forced labor, which Defendants do not contest. Accordingly, Plaintiffs have sufficiently pleaded vicarious liability and Counts II and V should not be dismissed.

**3.    Plaintiffs have plausibly alleged each element of their beneficiary liability claims**

Defendants contend that Plaintiffs' beneficiary liability claims are insufficiently supported. Mot. 23. Under 18 U.S.C. § 1595, a defendant is liable if they "knowingly benefit[] . . . financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [Chapter 77 of Title 18 of the U.S. Code]." To state a beneficiary liability claim, Plaintiffs must assert (1) a venture that has engaged in violation of the underlying trafficking laws; (2) that the defendant knew or should have known that the venture violated trafficking laws; (3) the defendant participated in that venture; and (4) the

defendant knowingly benefited from its participation. *Kitler v. Church of Jesus Christ of Latterday Saints*, No. 24-cv-01071, 2025 U.S. Dist. LEXIS 149001, at *25-26 (N.D.N.Y. Aug. 4, 2025).

The AC plausibly alleges each prong. Plaintiffs allege that Defendants together operated a forced labor trafficking scheme for profit. This scheme, which coerced Plaintiffs and others into providing labor through threats of serious harm, violated the TVPRA, and Defendants, who all colluded to coerce such labor, had actual or constructive knowledge that this forced labor enterprise violated the TVPRA and knowingly benefited from the violation. *See, e.g.,* AC ¶¶2-3, 6, 18-33, 34-36, 38, 49. This is sufficient to allege beneficiary liability.

It is notable that Defendants have not taken issue with any specific prong of the claim for beneficiary liability but rather argue that it fails based on Rule 8 and "speculation." Mot. 23. For the reasons set forth above, Plaintiffs' pleadings are sufficient at this stage. *See supra*, 19–22.

4. **The TVPRA allows for multiple forms of attempt and conspiracy liability and Plaintiffs have successfully pleaded those claims**

Defendants argue that Plaintiffs' Count VII (attempt) and Count IX (conspiracy) fail because these forms of liability only arose after 2023, after Plaintiffs had left Defendant's control. Mot. 23-24. Defendants conflate two concepts: (i) liability for attempt/conspiracy to violate the TVPRA and (ii) liability for attempt/conspiracy to *benefit* from a violation of the TVPRA.

Since 2008, it has been codified in 18 U.S.C. § 1595 that any victim of a violation of Chapter 77 of Title 18 of the U.S. Code can seek a civil remedy. This includes any victim of 18 § U.S.C. § 1594, which includes both attempt and conspiracy to commit any of the violations listed in 18 U.S.C. §§ 1581–1597, including forced labor. Therefore, liability for prong (i) clearly existed prior to 2023 and Plaintiffs' attempts/conspiracy claims should not be dismissed.

In 2023, Congress issued a "technical and clarifying update" to 18 U.S.C. § 1595, clarifying that civil "beneficiary liability" extended not only to those who knowingly benefited from a

26

violation of the TVPRA, but also those who attempted or conspired to benefit from such violation. *See* Abolish Trafficking Reauthorization Act of 2022, Pub. L. No. 117–347, 136 Stat. 6199 (2023). Defendants cite *Ratha*, an out-of-circuit case, for the proposition that those who attempt or conspire, but ultimately fail to, benefit from the TVPRA are not civilly liable. Mot. 24, citing *Ratha v. Phatthana Seafood Co.,* 35 F.4th 1159, 1175–76 (9th Cir. 2022). *Ratha*, however, predated Congress's clarifying amendment, and the Ninth Circuit has since reopened the question of attempt/conspiracy beneficiary liability in light of this amendment. *Ratha v. Rubicon Res., LLC*, No. 23-55299, 2025 U.S. App. LEXIS 5101 (9th Cir. Mar. 4, 2025). As such, and given Congress's clear intention to clarify, rather than amend the statute, Plaintiffs' attempt and conspiracy claims under prong (ii) should also not be dismissed.

Defendants also argue that Plaintiffs fail to allege agreement among the parties. Conspiracy can be established by showing that the parties have a "tacit understanding to carry out the prohibited conduct." *United States v. Svoboda*, 347 F.3d 471, 477 (2d Cir. 2003) (citing *United States v. Samaria*, 239 F.3d 228, 234 (2d Cir. 2001); *see also Akhtar v. Vitamin Herbal Homeopathic Ctr*., No. 19-CV-1422, 2021 U.S. Dist. LEXIS 255148, at *32 (E.D.N.Y. Apr. 30, 2021) (no proof of "explicit agreement" needed). The AC is replete with allegations regarding agreement among the Defendants sufficient to allege conspiracy. *See, e.g.*, AC ¶¶2-3, 6, 20-21, 24-25, 27, 29-33, 49, 56, 60, 100, 118. The conspiracy claim survives on this ground as well. *See also Paguirigan v. Prompt Nursing Emp't Agency LLC*, No. 17-CV-1302, 2019 U.S. Dist. LEXIS 165587, at *58-59 (E.D.N.Y. Sep. 23, 2019) (summary judgment granted for plaintiffs' on conspiracy claims when the undisputed facts demonstrate that co-conspirators entered into a joint enterprise with consciousness of its general nature and extent.)

27

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Motion be denied in its entirety.

Dated: October 3, 2025

Respectfully submitted,

**McALLISTER OLIVARIUS**
John F.O. McAllister
Pamela Takefman
641 Lexington Avenue, 13th Floor
New York, New York 10022
(212) 433-3456
jmcallister@mcolaw.com
ptakefman@mcolaw.com
*Attorneys for Plaintiffs*

28

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ZAN SUN** and **QING LING CHENG**, | |
| Plaintiffs, | **Case No.: 25-cv-03185** |
| v. | |
| **SHEN YUN PERFORMING ARTS, INC., FEI TIAN COLLEGE, FEI TIAN ACADEMY OF THE ARTS, DRAGON SPRINGS BUDDHIST INC., HONGZHI LI, and RUI LEE,** | **CERTIFICATION OF WORD COUNT** |
| Defendants. | |

I hereby certify that the word count of this memorandum of law complies with the word limits of S.D.N.Y. and E.D.N.Y. Civ. R. 7.1(c). According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under S.D.N.Y. and E.D.N.Y. Civ. R. 7.1(c) is 8,729 words.

Dated: October 3, 2025

_____
John F.O. McAllister

29