**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**ZAN SUN** and **QING LING CHENG**,

 *Plaintiffs*,

 v.

**SHEN YUN PERFORMING ARTS, INC., FEI TIAN COLLEGE, FEI TIAN ACADEMY OF THE ARTS, DRAGON SPRINGS BUDDHIST INC., HONGZHI LI,** and **RUI LI**,

 *Defendants.*

Case No. 7:25-cv-03185

**REPLY BRIEF IN SUPPORT**
**OF THE DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**
**PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and 12(b)(6)**

**Oral Argument Requested**

Steven M. Schneebaum*
Justin E. Butterfield*
Lea E. Patterson*
Terri Marsh*

**Counsel for:**
Shen Yun Performing Arts, Inc.,
Fei Tian College,
Fei Tian Academy of the Arts,
Dragon Springs Buddhist Inc.,
Shujia Gong,
Hongzhi Li, and
Rui Li.

*Admitted pro hac vice.*

Dated: October 17, 2025

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................iii

INTRODUCTION ...................................................................................................................1

ARGUMENT............................................................................................................................2

    I.   The Court Can Consider All of the Materials Cited in the Motion to Dismiss ............................2

    II.  Plaintiffs' Opposition Confirms That Their Claims Are Untimely...................................................4

    III. The Ministerial Exception Bars Plaintiffs' Claims...........................................................................5

        A.       The Ministerial Exception applies to Plaintiffs' TVPRA claims................................6

        B.       The Complaint demonstrates that Plaintiffs were ministers.......................................8

    IV. Plaintiffs Do Not Plausibly Allege Threats of Serious Harm Under 18 U.S.C.
        §1589(a)....................................................................................................................................10

    V.  Plaintiffs' Other Arguments Are Unavailing.....................................................................................13

        A.       Claims for Conspiracy or Attempt to Benefit are not Viable...................................13

        B.       Plaintiffs Fail to Pierce the Corporate Veil .................................................................14

CONCLUSION........................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Abafita v. Aldukhan*, No. 16-cv-06072, 2019 WL 6735148 (S.D.N.Y. Apr. 4, 2019) .............................12

*Bensky v. Indyke*, 743 F.Supp.3d 586 (S.D.N.Y. 2024) ................................................................. 4, 5

*Brown v. Amazon.com Servs. LLC*, No. 6:24-CV-06158, 2025 WL 592733 (W.D.N.Y. Feb. 24, 2025).............................................................................................................................................7

*Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648 (10th Cir. 2002).......................................6

*Doe v. Gov't of United States V.I.*, 771 F.Supp.3d 379 (S.D.N.Y. 2025) .........................................................4

*Fratello v. Archdiocese of N.Y.*, 863 F.3d 190 (2d Cir. 2017) .....................................................................9

*Headley v. Church of Scientology Int'l,* 687 F.3d 1173 (9th Cir. 2012) ...................................................7, 10, 11

*Headley v. Church of Scientology Int'l*, No. CV 09-3986, 2010 WL 3157064 (C.D. Cal. 2010), *aff'd*, 687 F.3d 1173 (9th Cir. 2012)............................................................................................... 6, 7

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171 (2012)........................... 6, 8

*In re Amaranth Nat. Gas Commodities Litig.*, 587 F.Supp.2d 513 (S.D.N.Y. 2008), *aff'd*, 730 F.3d 170 (2d Cir. 2013).......................................................................................................................14

*Jackson v. Mann*, 196 F.3d 316 (2d Cir. 1999).........................................................................................9

*Javier v. Beck*, No. 13-cv-2926, 2014 WL 3058456 (S.D.N.Y. July 3, 2014) ...........................................10

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991)................................................................... 2, 3

*Minskoff v. Am. Express Travel Related Servs. Co.*, 98 F.3d 703 (2d Cir. 1996) ...........................................14

*Muchira v. Al-Rawaf*, 850 F.3d 605 (4th Cir. 2017)................................................................................10

*Murphy v. I.S.K. Con. of New England, Inc.*, 409 Mass. 842 (1991) .........................................................11

*Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984 (9th Cir. 2013) .................................................................11

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732 (2020) ....................................................8

*Overall v. Ascension*, 23 F.Supp.3d 816 (E.D. Mich. 2014)....................................................................3

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998) ........................................................5

*Penn v. New York Methodist Hosp.*, 884 F.3d 416 (2d Cir. 2018).............................................................8

*Petruska v. Gannon Univ.*, 462 F.3d 294 (3d Cir. 2006)..........................................................................6

*QiZeng Chen v. U.S. Dep't of Just.,* 257 F.App'x 356 (2d Cir. 2007)......................................................9

*Reynolds v. Lifewatch, Inc.*, 136 F.Supp.3d 503 (S.D.N.Y. 2015)........................................................14

*Ross v. Jenkins*, 325 F.Supp.3d 1141 (D. Kan. 2018) .............................................................................12

*Schneider v. OSG, LLC*, No. 22-CV-7686, 2024 WL 1308690 (E.D.N.Y. Mar. 27, 2024)................. 5, 11

*Shaliehsabou v. Hebrew Home of Greater Wash., Inc.*, 363 F.3d 299 (4th Cir. 2004) .........................9

*Shukla v. Sharma*, No. 07-cv-2972, 2009 WL 10690810 (E.D.N.Y. Aug. 21, 2009) ......................... 7, 10

*Sterlinski v. Catholic Bishop of Chicago*, 934 F.3d 568 (7th Cir. 2019)...............................................9

*Susu Wei v. Holder*, 314 F.App'x 404 (2d Cir. 2009).............................................................................9

*TianJie Chen v. Holder*, 365 F.App'x 252 (2d Cir. 2010) .....................................................................9

*TNS Holdings, Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335 (1998) ...............................................................14

*Trs. of Empire State Carpenters Annuity v. Dykeman Carpentry, Inc.*, No. 13-cv-1508, 2014 WL 976822 (E.D.N.Y. Mar 12, 2014)...............................................................................................14

*U.S. v. Thompson*, 896 F.3d 155 (2d Cir. 2018)....................................................................................6

*United States v. Ballard*, 322 U.S. 78 (1944) .......................................................................................11

*United States v. Chaudhri*, 134 F.4th 166 (4th Cir. 2025)............................................................. 10, 13

*United States v. Davila*, 461 F.3d 298 (2d Cir. 2006)...........................................................................12

*United States v. LeBeau*, 335 F.Supp.3d 1206 (S.D. Cal. 2018) ............................................................3

*United States v. Toviave*, 761 F.3d 623 (6th Cir. 2014) .......................................................................13

*United States v. Zhong*, 26 F.4th 536 (2d Cir. 2022) ...........................................................................10

*White v. Nat'l Home Protection, Inc.*, No. 09 Civ. 4070, 2010 WL 1706195 (S.D.N.Y. Apr. 21, 2010)...........................................................................................................................................14

*Zhang v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47 (2d Cir. 2021) ...............................................9

**Statutes**

18 U.S.C. § 1589.....................................................................................................................................10

18 U.S.C. § 1591.......................................................................................................................................6

18 U.S.C. § 248.........................................................................................................................................9

**Other Authorities**

"Threat," Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/threat ................................................................................................12

IRS Form 4506-B, "Request for a Copy of Exempt Organization IRS Application or Letter," available at https://www.irs.gov/pub/irs-pdf/f4506b.pdf ...................................................3

McConnell, *Establishment and Disestablishment at the Founding, Part I: Establishment of Religion*, 44 Wm. & Mary L. Rev. 2105 (2003)................................................................................................6

**Rules**

Fed. R. Civ. Pr. 8 ............................................................................................................................1

Fed. R. Evid. 201 ...........................................................................................................................3

**INTRODUCTION**

Having reviewed the Amended Complaint ("AC"), Defendants' Motion to Dismiss ("MtD") and Plaintiffs' Opposition ("Opp."), this Court can see clearly what this case is about, and what it is *not* about. The Amended Complaint makes clear that this case is *not* about actionable injuries allegedly suffered by Plaintiffs Zan Sun and Qing Ling Cheng at the hands of Defendants Shen Yun Performing Arts, Inc., Fei Tian College, Fei Tian Academy of the Arts, Dragon Springs Buddhist, Inc., Hongzhi Li, or Rui Li, individually and/or together. What it *is* about is an effort to take down Shen Yun, a world-renowned performing arts company and a ministry of the Falun Gong religion.

The failure of the AC to satisfy the basic rules of pleading incorporated in Rule 8 of the Federal Rules of Civil Procedure (a pleading is meant to be "a short and plain statement of the claim showing that the pleader is entitled to relief") is readily apparent. The adjectives and adverbs lavishly deployed ("dreadful," "crushing," "brutal," all in the first three paragraphs) do nothing to suggest an entitlement to a judicial remedy. The section of the AC purporting to describe "the forced labor scheme" (¶¶22-73) contains not a single factual allegation concerning either Plaintiff. And the 40-page AC uses no fewer than 87 times the evocative term "child laborers," although the text of the document establishes that neither Plaintiff was in fact a child at any legally relevant time.

It is not by accident, nor should this Court ignore the fact, that the AC bundles allegations against all Defendants willy-nilly, and regularly purports to recount events alleged to have occurred far outside any defensible limitations period. No fact-finder will ever be properly tasked with evaluating what Plaintiff Sun says was his daily schedule at the Fei Tian Academy in 2008 (*see* AC, ¶82), or injuries supposedly incurred by Plaintiff Cheng "[i]n or around 2010" (AC ¶127) or "[i]n or around 2011" (AC ¶132). Whether Rui Lee has "a penchant for expensive clothing and luxury brands, including Hermes, Van Cleef, and Ferragamo" (AC ¶35) will never be at issue. The AC lacks any claim that Defendant Dragon Springs had anything to do with the narrative laid out. And Plaintiff Sun was not even enrolled

at Fei Tian Academy after May 2014.

The statute of limitation problem alone mandates dismissal of the Amended Complaint. Also fatal to the AC is the Ministerial Exception, which excludes from judicial scrutiny the activities of religious ministries. But the broad brush with which Plaintiffs choose to portray their case shows that what is intended here is a publicity campaign, not a lawsuit. The AC more closely resembles the work of an investigative reporter (a deeply flawed one, in Defendants' view) than a federal court complaint.

Plaintiffs were brought up in the Falun Gong religion, and as they showed talent as dancers, they sought admission to the elite world of Shen Yun, both to reach the pinnacles of artistic accomplishment and to promote the tenets of their faith: Truth, Compassion, and Forbearance. They are, of course, free, as everyone is, to repudiate the faith of their parents, and to live their lives according to different principles. But they were not trafficked, and Defendants did not violate their rights in treating them as student dancers. Sun was then expelled for violating rules and Cheng showed herself not to be able to meet Fei Tian College's artistic standards.

## ARGUMENT

### I.   The Court Can Consider All of the Materials Cited in the Motion to Dismiss

Plaintiffs' Opposition Brief raises objections to certain citations in the Motion to Dismiss. However, the Court may and should take those references into account. In deciding a motion to dismiss, the Court may consider "documents attached to the complaint as exhibits or incorporated in the complaint by reference" as well as "matters of which judicial notice may be taken." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). And here, in particular, correcting the Amended Complaint's misleading, partial quotation of Shen Yun's mission statement from its 2023 Form 990 to omit its religious mission, *see* ¶36n.1, is entirely appropriate. *See Kramer*, 937 F.2d at 774 ("Were courts to refrain from considering such documents, complaints that quoted only selected and misleading portions of such documents could not be dismissed under Rule 12(b)(6).").

2

Plaintiffs object to the Court's taking judicial notice of an IRS determination letter because, they assert, it is not "publicly available." But it *is* publicly available. While the IRS has not uploaded pre-2014 determination letters to its website, anyone can get a copy of such a letter by requesting it from the Service. *See* IRS Form 4506-B, "Request for a Copy of Exempt Organization IRS Application or Letter," available at https://www.irs.gov/pub/irs-pdf/f4506b.pdf. Furthermore, Fed. R. Evid. 201(b)(2) provides that courts may take judicial notice of documents that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," which includes documents issued by government agencies. *Overall v. Ascension*, 23 F.Supp.3d 816, 825 (E.D. Mich. 2014) ("The Court may … take judicial notice of the IRS … Determination Letters … because they are letters from a government agency."); *United States v. LeBeau*, 335 F.Supp.3d 1206, 1211 n.5 (S.D. Cal. 2018) (an "IRS Final Determination letter[]" is "subject to judicial notice"); *see Kramer*, 937 F.2d at 774 (permitting judicial notice of documents that "are required by law to be filed with the SEC, and no serious question as to their authenticity can exist."). While Plaintiffs are correct that such judicial notice cannot be deployed to establish the truth of assertions they contain, this Court may accept that the IRS's determination letter demonstrates that Dragon Springs Buddhist, Inc., and Fei Tian Academy asserted that they are a church and its integrated auxiliary, respectively, long before this litigation arose.

Finally, the media articles cited in the Motion are not presented as evidence; they illustrate legal arguments about the scope of the TVPRA and the legal definition of religion. For example, the piece describing Pope Saint John Paul II's efforts to oppose communist persecution of Catholics demonstrates the artificiality of the bright line Plaintiffs draw between political and religious activities. Obviously, nothing like whether the Pope's intervention brought down the Soviet Union is a factual dispute underlying Plaintiffs' claims. But they do not arise in a vacuum, and it is appropriate for the Court to consider the broader implications that a ruling in this case will have on the legal landscape.

3

## II.  Plaintiffs' Opposition Confirms That Their Claims Are Untimely.

In their Opposition, Plaintiffs concede that a TVPRA claim must be filed within 10 years of the alleged violation, meaning that no event occurring before April 18, 2015, would be actionable, even if the allegations of the FAC were true, unless some exception to the limitations bar applied. Opp., 5. They also acknowledge that Plaintiff Sun turned 18 in 2011, and Plaintiff Cheng in 2014. AC ¶¶74, 111, 118, 120. Insisting that their claims "concern *child* labor and trafficking," they tell the Court that "[b]etween 2008 **and 2015**, Plaintiffs served as *child laborers* for Defendants," Opp., 1 (emphasis added). But that is categorically false: neither was a "child" on the cutoff date in 2015.

It is true, as Plaintiffs assert, that "[t]he TVPRA covers a 'continuing tort,' such that "a single act occurring within the limitations period will preserve a claim based on all acts that were part of a single pattern," citing *Bensky v. Indyke*, 743 F.Supp.3d 586, 602 (S.D.N.Y. 2024). The problem, though, is that the AC does not allege any act after April 18, 2015, that could even arguably constitute a TVPRA violation. In the two cases on which Plaintiffs rely, *Bensky* and *Doe v. Gov't of United States V.I.*, 771 F.Supp.3d 379, 399 (S.D.N.Y. 2025) – both brought by victims of Jeffrey Epstein's horrific sex-trafficking – the complaints alleged specific things that happened within the limitations period. Here, the AC makes no such claim.

Plaintiffs argue that "each day rehearsing at Dragons Springs or on tour, or in Cheng's case, working in the costume factory, was an act of forced labor that resulted from trafficking." Opp., 5. But this misses the mark by far. For one thing, the AC does not even say that either Plaintiff was "on tour" during the five weeks between April 18 and May 24, 2015 (when Sun left Dragon Springs, AC ¶101) or June 18, 2015 (when Cheng alleges that her "touring group" was placed "on hold," and she was reassigned to the "costume factory"). AC ¶¶135-36. And the entirety of the allegations about Cheng's work after June are in a single paragraph, AC ¶136, with no mention of any kind of abuse, mistreatment, threats, or coercion.

Nor does the doctrine of equitable tolling have any relevance. There is no viable claim that Plaintiffs – adults after 2014 – remained so "controlled" by Defendants that they could not bring this lawsuit within the permitted timeframe. This is especially clear given the allegations that both suffered debilitating physical injuries while at Dragon Springs – Sun between 2008 and 2014 (AC ¶¶93-97) and Cheng in 2010 and 2011 (AC ¶¶127-32) – and yet were somehow unable to pursue any kind of remedy.

Defendants do not deny that the TVPRA permits an action for "mental injuries." Opp., at 5 and n.3. But merely stating that Defendants, exercising some kind of transcontinental remote-control, "forced" them to work for Falun Gong-related entities in New Zealand, the other side of the world, after they left the Academy (Sun because he was expelled, Cheng because she did not make the grade for admission to the College) strains credulity beyond the breaking point. This case is facially distinguishable from *Schneider v. OSG, LLC*, No. 22-CV-7686, 2024 WL 1308690 (E.D.N.Y. Mar. 27, 2024), in which, as in the cases discussed earlier, there were allegations of threats, a dismissal from office, and denial of demands for payment *within* the 10-year limitation period. *Id.* at *4. This opened the door to prior acts "that were [allegedly] part of a single pattern," *Bensky*, 743 F.Supp.3d at 602. Here, Plaintiffs assert that every connection they had with Shen Yun reflected such a "pattern," but no factual allegation supports the inference that the "pattern" persisted through or beyond April 2015.

In any event, Plaintiffs tell the Court in the very first sentence of the Introduction to their Opposition that "[t]his case concerns child labor and trafficking endured by Plaintiffs." But neither was a "child" after April 18, 2015, nor is there any allegation in the AC that they were "trafficked" following that date. The claims are time-barred, mandating dismissal.

### III.   The Ministerial Exception Bars Plaintiffs' Claims

The Ministerial Exception is an appropriate basis for dismissal because the grounds for it "appear[] on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74-75 (2d Cir. 1998). *See Rweyemamu v. Cote*, 520 F.3d 198 (2d Cir. 2008) (affirming the grant of a Rule 12(b)(6) motion on

Ministerial Exception grounds); *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006); *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 654 (10th Cir. 2002).

### A. The Ministerial Exception applies to Plaintiffs' TVPRA claims

Plaintiffs fundamentally misunderstand both the Ministerial Exception and how it applies to this case. The Exception is a core component of the Establishment Clause. Because a hallmark of established religion is government control over ministers, McConnell, *Establishment and Disestablishment at the Founding, Part I: Establishment of Religion*, 44 Wm. & Mary L. Rev. 2105, 2131-33 (2003), government is not allowed to interfere in a religious organization's relationship with its ministers. *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 182-85, 188-89 (2012).

Plaintiffs attack a straw man. No one is arguing that the Ministerial Exception immunizes religious organizations from all legal constraints. The Ministerial Exception would not justify, for example, actual imprisonment, but Plaintiffs' claims focus on "subtler" allegations of religious pressure to accept allegedly poor working conditions and low pay: ultimately, labor disputes to which the Ministerial Exception does apply. And Plaintiffs' claims are deeply entangled in religious questions. *See infra* Section III.

Plaintiffs overread *U.S. v. Thompson*, 896 F.3d 155, 166 (2d Cir. 2018), Opp. 13. Thompson, convicted of child sex trafficking, brought a facial overbreadth challenge to 18 U.S.C. §1591 (a TVPRA provision irrelevant here), contending that prohibiting child sex trafficking *might* harm the rights of a *hypothetical* religious organization. 896 F.3d at 163-66. In analyzing Thompson's Ministerial Exception argument, the Second Circuit "ha[d] little difficulty in concluding" that §1591 regulates "only outward physical acts" and does not interfere "with an internal church decision that affects the faith and mission of the church itself." *Id.* at 166. *Thompson* did *not* consider the TVPRA's labor provisions (the ones at issue here), which other courts *have* found subject to the exception because they implicate "the faith and mission of the church itself." *See, e.g., Headley v. Church of Scientology Int'l*, No. CV 09-3986,

2010 WL 3157064 (C.D. Cal. 2010), *aff'd on other grounds,* 687 F.3d 1173, 1181 (9th Cir. 2012). Although Plaintiffs discount the *Headley* district court decision, Opp., 13, the Ninth Circuit failed to reach the Ministerial Exception on appeal only because it held that the TVPRA had not been violated. Indeed, the Circuit recognized the exception as posing serious questions about the constitutional scope of the TVPRA.[1] *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1181 (9th Cir. 2012).

Because the TVPRA encompasses both literal imprisonment and subtler workplace disputes, *see e.g. Brown v. Amazon.com Servs. LLC*, No. 6:24-CV-06158, 2025 WL 592733 at *5 (W.D.N.Y. Feb. 24, 2025), a categorical rule is inapt. When a TVPRA claim is based on allegations that would require the court to "analyze the criteria Defendant uses to choose ministers and the reasonableness of the methods used to enforce church policy and encourage members to remain with the organization and the religion itself," the Ministerial Exception applies. *Headley*, 2010 WL 3157064, at *6 ("Determining whether Scientology's practices of routing out, censorship, or heavy manual labor as a form of discipline, for example, constitute involuntary servitude within the meaning of the TVPA is precisely the type of entanglement that the Religion Clauses prohibit."). *Shukla v. Sharma*, No. 07-cv-2972, 2009 WL 10690810 at *6-7 (E.D.N.Y. Aug. 21, 2009), *see* Opp., 13-14, is not to the contrary; *Headley* demonstrates that *Shukla*'s assumption that TVPRA claims would never implicate ministerial concerns was incorrect.

Plaintiffs' proposition that the Ministerial Exception does not apply because they were unpaid or underpaid, Opp. 15, begs the contention that they ought to have been paid (or paid more) in the first place. But volunteer pastors, musicians, and missionaries are common, and the government can interfere with volunteer ministers no more than with salaried ones. Nor is the Ministerial Exception applicable only to adults. For example, in church youth mission trips, minors often travel abroad to perform unpaid (often manual) labor to communicate religious beliefs. If a teenager feels pressured

---

[1] Plaintiffs criticize Defendants' citation to out-of-Circuit or pre-*Hosanna-Tabor* caselaw while citing both themselves.

7

to participate, is she being trafficked? Plaintiffs' interpretation would say yes, but that would criminalize common missionary activities.[2]

### B. The Complaint demonstrates that Plaintiffs were ministers.

The Complaint shows that Plaintiffs were, in the eyes of the law, ministers. Whether Falun Gong is religious is not a disputed fact, Opp. 18, because despite Plaintiffs' efforts to secularize the AC's description of Falun Gong, they cannot escape the inexorably religious nature of beliefs about eternal salvation and Hell, which they attribute to Falun Gong. AC ¶¶70, 98, 125. Establishing that Shen Yun is "religiously affiliated," *see Penn v. New York Methodist Hosp.*, 884 F.3d 416, 425 (2d Cir. 2018),[3] starts and ends with its mission statement, which the AC selectively quoted, omitting the religious mission: "to carry forward the goodness of [Falun Gong] and [the] universal principle[s] of Truth, Compassion, and Forbearance." SY 990; AC ¶36. The AC demonstrates that Shen Yun integrates religious practice with expressive performance designed to communicate a spiritual message of salvation: precisely the kind of role courts routinely recognize as "ministerial," when employees "personify" a faith's message in outward-facing functions. *Hosanna-Tabor*, 565 U.S. at 188-89; MtD, 14-15.

Plaintiffs also argue that performers are not religious enough for the Ministerial Exception to apply, Opp., 16-17. But assessing that claim would require the Court to determine what aspects a religious organization should consider important: something the judiciary may not do. The exception applies to anyone who "serves as a messenger or teacher of its faith," *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 754 (2020)(cleaned up), even if they primarily perform secular functions, lack religious titles, and are not co-religionists, *id.* at 766 (Sotomayor, J., dissenting). Nor can courts withhold the exception from non-clerical participants, lest they "penalize religious groups for allowing

---

[2] The RFRA argument is incorporated in the broader Ministerial Exception and TVPRA arguments and is not waived. Second Circuit precedent holds RFRA applicable in suits between private parties. *Hankins v. Lyght*, 441 F.3d 96, 103 (2d Cir. 2006).

[3] Plaintiffs misconstrue *Penn*, Opp., 17. *Penn* held that a hospital was entitled to the Ministerial Exception because the employee at issue fulfilled a ministerial role, even though the hospital was only nominally religiously-affiliated. *Id.* at 426.

laypersons to participate in their ministries." *Fratello v. Archdiocese of N.Y.*, 863 F.3d 190, 207 (2d Cir. 2017). Even a church organist, who "just played the notes on the sheet music," was covered by the Ministerial Exception:

> If the [church] believes that organ music is vital to its religious services, and that to advance its faith it needs the ability to select organists, who are we judges to disagree? Only by subjecting religious doctrine to discovery and, if necessary, jury trial, could the judiciary reject a church's characterization of its own theology and internal organization. Yet it is precisely to avoid such judicial entanglement in, and second-guessing of, religious matters that the Justices established the rule of *Hosanna-Tabor.*

*Sterlinski v. Catholic Bishop of Chicago*, 934 F.3d 568,570 (7th Cir. 2019).

The Opposition (at 19) misapplies *Zhang v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47 (2d Cir. 2021), which interpreted the 18 U.S.C. §248 term "place of religious worship," not the Ministerial Exception. *Id.* at 49-50. The exception is not limited to places of worship. *See, e.g., Shaliehsabou v. Hebrew Home of Greater Wash., Inc.*, 363 F.3d 299, 309-11 (4th Cir. 2004).

Finally, Plaintiffs assert that Defendants are insufficiently "sincere" to be promoting a religious message because its leaders and adherents have described Falun Gong as not a religion. Opp., 18. But "sincerity" tests whether a person genuinely holds a belief. *See Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999). It may be disputed where a pattern of conduct shows inconsistency with the professed faith. But no allegation in the AC provides evidence of that, nor do the cases Plaintiffs cite, at Opp., 18. Both *Susu Wei v. Holder*, 314 F.App'x 404 (2d Cir. 2009), and *TianJie Chen v. Holder*, 365 F.App'x 252 (2d Cir. 2010) involved asylum applicants who failed to establish with sufficient credibility that they were Falun Gong practitioners, and in fact they likely were not. But in numerous other cases, religious asylum was granted to actual Falun Gong adherents. *See, e.g., QiZeng Chen v. U.S. Dep't of Just.,* 257 F.App'x 356, 361 (2d Cir. 2007). Regardless of whether they use the word "religion," followers of Falun Gong, including Shen Yun performers, *do* sincerely practice their faith.

9

**IV.   Plaintiffs Do Not Plausibly Allege Threats of Serious Harm Under 18 U.S.C. §1589(a).**

To qualify as serious harm under the TVPRA, conditions must be such as would "compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. §1589(c)(2).

Plaintiffs complain about the conditions of their schooling at Dragon Springs, including alleged "public humiliation" sessions (¶¶62, 65), abuse (¶¶52, 54, 66, 113), insufficient sleep (¶¶82, 83, 112); isolation (¶¶5, 71, 143, and the like. But such a stressful and inhospitable environment would drive students away – not compel them to return and continue performing. And surely Defendants did not "obtain their labor" "by means of" those unfavorable conditions. *See* §1589(a). As in *Headley,* Plaintiffs' allegations with respect to "the discipline, lifestyle, and familial constraints imposed as part of" life at Dragon Springs are "overwhelmingly not of the type that [would have caused them] to continue their work." *See* 687 F.3d at 1180. Plaintiffs' efforts, Opp., 10-11, to dismiss *Headley* (which is directly on point) fail. The Second Circuit, other Circuits, and this Court have relied on *Headley. See, e.g.*, *United States v. Zhong*, 26 F.4th 536, 550 (2d Cir. 2022); *Muchira v. Al-Rawaf*, 850 F.3d 605, 624 (4th Cir. 2017); *Javier v. Beck*, No. 13-cv-2926, 2014 WL 3058456, at *5 n.4 (S.D.N.Y. July 3, 2014).

Although the Opposition (at 7) contends that Plaintiffs were physically restricted to Dragon Springs, the AC does not allege that they were ever stopped from leaving or that the security guards' purpose was anything other than to provide security. *See* AC ¶56; MtD, 9. And while Plaintiffs allege that Defendants "resist[ed]" returning their passports, AC¶54, they do not say that either of them ever asked to access their passport and was refused. Neither Plaintiffs claims to have encountered any difficulty obtaining their passports when they left Dragon Springs and returned to their home country. AC ¶¶101,136. Nor do they report threats related to legal immigration status, the issue aet the core of many of the cases they invoke, Opp., 9,13. *See, e.g.*, *United States v. Chaudhri*, 134 F.4th 166, 174 (4th Cir. 2025); *Shukla*, 2009 WL 10690810 at *11.

10

Instead, Plaintiffs affirmatively state that they remained at Dragon Springs, not because they relished additional abuse or because they were physically unable to leave, but because of religious concerns, *e.g.* AC ¶¶98 (Sun felt unable to leave because he believed he would suffer karmic "misfortune," "go to hell or experience a fate even worse than hell"); 125 (Cheng believed that leaving Shen Yun would be "a fate worse than death"). But concerns that spiritual harm may await are insufficient to support a forced labor claim: *See Headley,* 687 F.3d at 1180. Both religious shunning, *see id.* (collecting cases), and "[t]hreats of divine retribution" are constitutionally protected, *see Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 1007-08 (9th Cir. 2013). "[T]he imposition of tort liability for conduct that is allegedly connected to religious belief, such as is involved in the present case, presents a sufficient potential deprivation of religious freedom." *Murphy v. I.S.K. Con. of New England, Inc.*, 409 Mass. 842, 850 (1991). Whether "disputed [religious] beliefs are fundamentally flawed and inconsistent with a proper notion of human development … has no place in the courts." *Id.* at 855.

Plaintiffs would incorrectly confine the First Amendment's operation to intra-church doctrinal schisms, Opp., 9-10. But Falun Gong teachings, like those of many religions, include consideration of eternal consequences. If Plaintiffs' interpretation were sustained, countless sermons of many faiths would become legally suspect, especially where they motivate members to sacrifice or tithe for their church. But the church autonomy doctrine prevents criminalization of religious teachings just as it disallows courts to resolve doctrinal schisms. *See, e.g.*, *United States v. Ballard*, 322 U.S. 78, 86-87 (1944).

*Schneider*, 2024 WL 1308690 (E.D.N.Y. Mar. 27, 2024), on which Plaintiffs heavily rely (Opp., 8), is not to the contrary, as it involved radically different allegations (*e.g.* blackmail after orders to engage in sexual misconduct) and did not raise issues of religious concern, as does this action. *Id.* at *7 ("The plaintiff did not allege that he thought the free labor would be spiritually beneficial"). Plaintiffs, by

11

contrast, joined Shen Yun to further its religious mission, and the harm they claim they feared, were they to abandon that mission, was religious.[4] MtD 9,11.

Moreover, warnings (religious or not) are not the same as actionable threats. A "threat," Merriam-Webster[5] tells us, is "an expression of intention to inflict evil, injury, or damage." The Second Circuit has endorsed that definition: see *United States v. Davila*, 461 F.3d 298, 302 (2d Cir. 2006) (citations omitted). Threats, which express *intent* to inflict harm, are fundamentally distinct from warnings of future speculative consequences (including those in the afterlife) over which the speaker has no control. Yet that is what Plaintiffs allege here. For example, in AC ¶98, Sun complains that "Defendants" told him that giving up Shen Yun would bring about "misfortune." This is one example of very many in which it is clear that no one is expressing an intent to inflict harm on her, but at most, she is being informed of the purported cosmic consequences that her religious faith foresees. And even where the AC refers to potential physical injury, as in ¶56 (suggesting that students are "admonished" to avoid walking in the woods near Dragon Springs, *inter alia* because there may be bears there), it is not suggested that any Defendant ever threatened either to harm Plaintiffs or anyone else. A warning that something is dangerous is not a threat.

Similarly, the vague assertion that [presumably all] Defendants demanded obedience to Li Hongzhi's "whims," Opp., 8, is nothing more than a rhetorical exaggeration. Plaintiffs say little with respect to Li Hongzhi himself (or Li Rui, for that matter), and much of what they do allege describes constitutionally--protected activities (*e.g.*, a religious leader's direction of meditation or discussion of potential spiritual consequences). AC ¶¶98,129.

Ultimately, Plaintiffs do not and cannot dispute that Cheng's and Sun's parents chose (and had

---

[4] *Ross v. Jenkins*, 325 F.Supp.3d 1141, 1153 (D. Kan. 2018), and *Abafita v. Aldukhan*, No. 16-cv-06072, 2019 WL 6735148 (S.D.N.Y. Apr. 4, 2019) (*see* Opp., 8) were default judgments, and are of no precedential value.
[5] https://www.merriam-webster.com/dictionary/threat.

authority) to enroll them at the Academy, and that they themselves did what was necessary to qualify.[6] High-level student performers, like athletes and others, often endure expensive, rigorous training, long hours, travel, and injuries for little or no pay. But they are not victims of trafficking. Applying Plaintiffs' interpretation of the TVPRA would effectively criminalize college sports, the Olympics, and similar high-level competitive activities often involving young people and requiring comparable levels of discipline, intensity, and commitment.

## V.  Plaintiffs' Other Arguments Are Unavailing

### A.  Claims for conspiracy or attempting to benefit are not viable.

(1)      Plaintiffs do not contest that conclusory averments of parallel conduct are not enough to plead conspiracy. *Baxla v. Chaudhri*, 225 F.Supp.3d 588, 594 (E.D. Va. 2016). Yet they allege nothing more than parallel activity by Defendants, with decision-making supposedly "deeply-centralized" with Hongzhi Li (AC ¶30). But Defendant Li cannot have conspired with himself, or with the companies that were allegedly within his control. *See, e.g.*, *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769, 777 (1984) (holding company and wholly-owned subsidiary which did not have "independent centers of decision-making" were incapable of conspiring with each other); *Bill's Birds Inc. v. Trademarketing Resources Inc.*, 920 F.Supp.2d 357 (E.D.N.Y. 2013) (principal and agent could not conspire because agent exercised little independent discretion); *Gucci v. Gucci Shops, Inc.*, 651 F.Supp. 194 (S.D.N.Y. 1986) (two corporations under common control are not capable of conspiring). The claims for conspiring or attempting to benefit are not tenable.

(2)      Conspiring or attempting to benefit from forced labor was not actionable during the relevant time. (MtD, 23). Other than misrepresenting Defendants' arguments (Opp., 26), Plaintiffs cite only to

---

[6] *United States v. Chaudhri*, 134 F.4th 166 (4th Cir. 2025), which involved the enslavement and threatened murder of an adult daughter-in-law, distinguished *United States v. Toviave*, 761 F.3d 623 (6th Cir. 2014), because "women are not children" and defendants had no parental role, not because (as Plaintiffs argue, Opp., 8-9), *Toviave*'s logic was applicable only in Michigan. *Id.* at 178.

the 2023 TVPRA amendment, which does not apply retroactively.

### B. Plaintiffs fail to pierce the corporate veil

Plaintiffs reiterate their threadbare recitation of the defining criteria and unsupported claims at AC ¶¶20, 30–31, 35. Plaintiffs' referenced paragraphs are conclusory at best and provide no support for claims that Defendants are in essence one and the same. For example, the extent of Plaintiffs' assertions that the Lis commingle funds with other Defendants is that the Lis are "likely" wealthy and that Mrs. Li "is known to have a penchant for expensive clothing." AC ¶35. Even if these allegations were true, they do not state facts that would support an assertion of co-mingling of funds.

The AC alleges no facts sufficient to show that the Lis were *agents* of other Defendants, much less their *alter egos*. At no point do Plaintiffs provide any manifestation of consent that the Lis act on behalf of and subject to other Defendants' control (or vice-versa). *In re Amaranth Nat. Gas Commodities Litig.*, 587 F.Supp.2d 513, 546–47 (S.D.N.Y. 2008), *aff'd*, 730 F.3d 170 (2d Cir. 2013); *see also Minskoff v. Am. Express Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996).

The broad strokes of the AC are a far cry from the facts in *Trs. of Empire State Carpenters Annuity v. Dykeman Carpentry, Inc.*, No. 13-cv-1508, 2014 WL 976822 (E.D.N.Y. Mar 12, 2014), upon which they rely for the propriety of their conclusory allegations. Dykeman's plaintiffs asserted that wages were paid through alternate companies to avoid union obligations. Plaintiffs here make no comparable, non-conclusory assertion that, if true, would constitute an alter ego. Bald assertions that an individual "controlled the day-to-day operations" of an entity is insufficient. *Reynolds v. Lifewatch, Inc.*, 136 F.Supp.3d 503, 525 (S.D.N.Y. 2015). Plaintiffs have not carried and cannot carry the "heavy burden" to pierce the corporate veil. *White v. Nat'l Home Protection, Inc.*, No. 09 Civ. 4070, 2010 WL 1706195, at *3 (S.D.N.Y. Apr. 21, 2010) (quoting *TNS Holdings, Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339 (1998)).

## CONCLUSION

For these reasons and for those in the Motion, the Amended Complaint should be dismissed.

14

Respectfully submitted,

*Steven M. Schneebaum*

_____

Steven M. Schneebaum*
Steven M. Schneebaum PC
1750 K Street NW #1210
Washington, DC 20006
sms@smslawdc.com
Telephone: (202) 742-5900


Justin E. Butterfield*
Lea E. Patterson*
Butterfield & Patterson, PLLC
P.O. Box 941681
Plano, Texas 75094
justin@butterfieldpatterson.com
lea@butterfieldpatterson.com
Telephone: (945) 284-0700

Terri Marsh*
Executive Director
Human Rights Law Foundation
1333 New Hampshire Ave. NW.
Suite 204
Washington, DC 20036
terri.marsh.hrlf@gmail.com
Telephone: (202) 774-0893


*Counsel for Shen Yun Performing Arts, Inc., Fei Tian College, Fei Tian Academy of the Arts, Dragon Springs Buddhist Inc., Hongzhi Li, and Rui Li.*

*\*Admitted pro hac vice.*

Dated: October 17, 2025

15