**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**ZAN SUN** and **QING LING CHENG**,

                      *Plaintiffs*,

       v.

**SHEN YUN PERFORMING ARTS, INC.,**
**FEI TIAN COLLEGE, FEI TIAN**
**ACADEMY OF THE ARTS, DRAGON**
**SPRINGS BUDDHIST INC.,**
**HONGZHI LI,** and **RUI LI**,

                      *Defendants*.

Case No. 7:25-cv-03185

---

**THE ENTITY DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES**
**TO PLAINTIFFS' AMENDED COMPLAINT**

Defendants Shen Yun Performing Arts, Inc., Fei Tian College, Fei Tian Academy of the Arts, and Dragon Springs Buddhist, Inc. ("the Entity Defendants"), respectfully submit this Answer and Affirmative Defenses to Plaintiffs' Amended Complaint ("AC").

**INTRODUCTION**

A.     The following Answer and Affirmative Defenses are filed on behalf of the Entity Defendants only; Defendants Mr. Hongzhi Li and Ms. Rui Li are separately represented.

B.     Throughout the AC, the six Defendants are lumped together without individual identification. In the more than 100 separate paragraphs in the AC in which undifferentiated "Defendants" are referenced, answers are supplied on behalf of Defendants collectively. Where facts are alleged with respect to one or more of the Entity Defendants, the answer is presented on behalf of that or those Defendant(s), and, unless otherwise indicated, the other Entity Defendants assert that they lack knowledge or information sufficient to form a belief as to the truth of the allegations.

C.     The Entity Defendants state their standing objection to the use of such terms as "child laborers" (which appears 87 times in the 204 paragraphs of the AC, including three times in the same

1

sentence) and "forced labor" (43 iterations), as false and unjustified, and aver affirmatively that, during the relevant period, neither Plaintiff was in fact a "child" (Plaintiff Sun became 18 years old in 2010, and Plaintiff Cheng in 2014), nor is it accurate to refer to them or to any other Shen Yun performers as "laborers" or as "forced" in any way.

D.      Many of the numbered paragraphs of the AC make purportedly factual statements about specific individuals' "beliefs" or "feelings," or refer to alleged facts within only their own knowledge, or the knowledge of others. In those and numerous similar instances, the Entity Defendants respond that they lack knowledge or information sufficient to admit or deny them, and such a response is not, and must not be deemed to be, an admission.

**THE ENTITY DEFENDANTS' ANSWERS**

The Entity Defendants answer the individual paragraphs of the AC as follows:

1.      The Entity Defendants admit that Shen Yun Performing Arts, Inc ("Shen Yun") has developed a world-renowned reputation for its performances. Otherwise, the Entity Defendants deny the allegations in paragraph 1.

2.      The Entity Defendants admit that Dragon Springs is located in Cuddebackville, New York, and admit that Cuddebackville, New York, is within the natural habitat range of the American Black Bear. The Entity Defendants deny the remaining allegations and characterizations (*e.g.*, "confine"; "armed guards"; "cannot leave"; "control"; "destroys") contained in paragraph 2.

3.      The Entity Defendants deny the allegations contained in paragraph 3.

4.      The Entity Defendants admit that Shen Yun performances occur in multiple cities and countries and that qualified dancers and musicians participate in tours. Otherwise, the Entity Defendants deny the allegations contained in paragraph 4.

5.    The Entity Defendants admit that Plaintiff Sun attended Fei Tian Academy and College, that Plaintiff Cheng attended the Academy, and that both performed many shows with Shen Yun in various locations. The Entity Defendants otherwise deny the allegations in paragraph 5.

6.    The Entity Defendants deny the allegations in paragraph 6. They aver affirmatively that they did not violate the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1581 *et seq.* ("TVPRA"), and that Plaintiffs are not entitled to damages or any other form of relief.

7.    The Entity Defendants admit that Plaintiffs purport to assert claims under the TVPRA, and this Court has federal-question jurisdiction over properly pleaded federal claims. The Entity Defendants deny that Plaintiffs have stated any viable TVPRA claim.

8.    The Entity Defendants admit that venue lies in the Southern District of New York for purposes of this action.

9.    This paragraph contains conclusions of law to which no answer is required.

10.    The Entity Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10.

11.    The Entity Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11.

12.    The Entity Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12.

13.    The Entity Defendants admit that Shen Yun Performing Arts, Inc. is a New York nonprofit organization and that its principal address is 140 Galley Hill Road, Cuddebackville, New York 12729.

14.    The Entity Defendants admit that Fei Tian College is a religiously-affiliated nonprofit post-secondary educational institution accredited by the New England Commission of Higher Education, and that it is located at 140 Galley Hill Road, Cuddebackville, New York 12729.

15. The Entity Defendants admit that Fei Tian Academy of the Arts is a religious nonprofit school authorized to operate grades K-12, holding an absolute charter from the New York Board of Regents; that it is registered with the New York Department of Education; and that it is located at 140 Galley Hill Road, Cuddebackville, New York 12729.

16. The Entity Defendants admit the allegations contained in paragraph 16, and aver that Dragon Springs is recognized as a "church" by the Internal Revenue Service.

17. The Entity Defendants admit that Defendant Mr. Hongzhi Li is an adult resident of New York State, and that he founded Falun Gong (also called Falun Dafa), a revival of an ancient spiritual practice in the Buddhist tradition, and Shen Yun (for which he serves as artistic director and spiritual leader). The Entity Defendants admit that Falun Gong practitioners often refer to Hongzhi Li as "Master," which, as used in the Falun Gong community, is a synonym of "teacher" and refers to his role of spiritual leadership within the Falun Gong faith. The Entity Defendants otherwise deny the allegations contained in paragraph 17.

18. The Entity Defendants admit that Mr. Hongzhi Li provides spiritual and artistic guidance to Shen Yun as spiritual leader and artistic director. The Entity Defendants deny that he was an employee or agent and deny the remaining allegations contained in paragraph 18.

19. The Entity Defendants admit that Rui Li is an adult resident of New York State, and is married to Hongzhi Li. The Entity Defendants admit that she was Chief Financial Officer of Shen Yun from 2008 to 2013, and that Falun Gong practitioners often refer to Mrs. Li as "ShiMu," a traditional Chinese Buddhist term translating to "Master's wife," often associated with a maternal figure within the spiritual community having a spiritually advisory role. Otherwise, the Entity Defendants deny the allegations contained in paragraph 19.

20. The Entity Defendants deny the allegations contained in paragraph 20.

21. The Entity Defendants deny the allegations contained in paragraph 21.

4

22.    The Entity Defendants admit that Shen Yun was incorporated in 2006 and that it performs in the United States and elsewhere. The Entity Defendants otherwise deny the allegations contained in paragraph 22.

23.    The Entity Defendants deny the allegations contained in paragraph 23.

24.    The Entity Defendants admit that the Academy was granted a charter by the New York State Board of Regents for and on behalf of the New York State Education Department in 2007; that Fei Tian Academy is a religious secondary school specializing in performing arts; and that qualified Academy students may have the opportunity to participate in a practicum allowing them to perform with Shen Yun. The Entity Defendants deny the remaining allegations in paragraph 24.

25.    The Entity Defendants deny the allegations contained in paragraph 25.

26.    The Entity Defendants admit that Fei Tian College was granted a charter in 2011 by the New York State Board of Regents for and on behalf of the New York State Education Department; that the College is a religiously-affiliated post-secondary educational institution specializing in performing arts, and that qualified College students also may have the opportunity to participate in a practicum allowing them to perform with Shen Yun. The Entity Defendants deny the remaining allegations in paragraph 26.

27.    The Entity Defendants deny the allegations contained in paragraph 27.

28.    The Entity Defendants admit that Dragon Springs is an approximately 400-acre property in Cuddebackville, New York, that that property varies in elevation, and that Shen Yun, Fei Tian Academy, and Fei Tian College are located at the Dragon Springs property. They admit that the Dragon Springs campus includes offices, rehearsal spaces, educational facilities, and dormitory facilities, and that Dragon Springs is sometimes referred to as "the Mountain." The Entity Defendants deny the remaining allegations in paragraph 28.

29.    The Entity Defendants deny the allegations contained in paragraph 29.

5

30. The Entity Defendants deny the allegations contained in paragraph 30 and aver affirmatively that Hongzhi Li is consulted for guidance proper for an artistic director and spiritual leader for Shen Yun, including but not limited to costumes, lighting, music, and dance.

31. The Entity Defendants admit that Shen Yun, the Academy, and the College are located on the Dragon Springs campus, and that certain individuals work or volunteer at Shen Yun, the Academy, and/or the College. The Entity Defendants deny the remaining allegations contained in paragraph 31.

32. The Entity Defendants deny the allegations contained in paragraph 32.

33. Plaintiffs' explanation of their decision to plead allegations against "'Defendants' as a collective whole" is a legal characterization to which no response is required. To the extent a response is required, the Entity Defendants deny that this characterization is appropriate and otherwise deny the allegations contained in paragraph 33.

34. The Entity Defendants aver that Shen Yun's public tax filings speak for themselves. The Entity Defendants deny that Shen Yun is a for-profit business or that the figures are properly characterized as alleged in paragraph 34, and deny the remaining allegations contained in paragraph 34.

35. The Entity Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35.

36. The Entity Defendants admit that Shen Yun is recognized as a tax-exempt organization under 26 U.S.C. § 501(c)(3), and that Plaintiffs quote part of Shen Yun's mission statement, but deny that the partial quotation fairly articulates Shen Yun's mission. The Entity Defendants deny the remaining allegations in paragraph 36.

37. The Entity Defendants admit that Shen Yun performances include classical Chinese dance, live musical accompaniment, costumes, historical and cultural themes, and digital backdrops.

They deny the characterization that Shen Yun is merely or "ostensibly" cultural entertainment, averring that Shen Yun's operations are based in religion, and that it delivers a religious message to its audiences. The Entity Defendants deny any remaining allegations in paragraph 37.

38. The Entity Defendants admit that Mr. Hongzhi Li founded Falun Gong; that Falun Gong practitioners oppose the Chinese Communist Party's persecution of Falun Gong; that Falun Gong practitioners engage in self-improvement practice and meditation; and that Shen Yun is a religious organization affiliated with the Falun Gong faith. The Entity Defendants deny that this paragraph fairly and accurately characterizes the spiritual practice, beliefs, and goals of Falun Gong, and deny the remaining allegations contained in paragraph 38.

39. The Entity Defendants aver that the statements by Mr. Hongzhi Li speak for themselves. They deny Plaintiffs' characterization of Falun Gong and deny the remaining allegations in paragraph 39.

40. The Entity Defendants aver that the cited lectures, publications, and interview, if accurately identified, speak for themselves. Defendants deny Plaintiffs' characterization of those materials and of Falun Gong, and deny any remaining allegations in paragraph 40.

41. The Entity Defendants deny the allegations contained in paragraph 41.

42. The Entity Defendants aver that Shen Yun's website and blog posts speak for themselves. They deny Plaintiff's characterization of those materials. Specifically, to the Entity Defendants' knowledge, no one has ever claimed that Shen Yun is a religion. They deny the remaining allegations in paragraph 42.

43. The Entity Defendants admit that Shen Yun performances typically include two pieces concerning the persecution of Falun Gong practitioners in China. They deny that Shen Yun's performances do not spread a religious or spiritual message and deny the remaining allegations in paragraph 43.

44.    The Entity Defendants deny the allegations contained in paragraph 44.

45.    The Entity Defendants admit that Falun Gong materials are made available in connection with many Shen Yun performances (albeit not by any of the Entity Defendants), and deny the remaining allegations in paragraph 45.

46.    The Entity Defendants are without knowledge or information sufficient to identify the materials alluded to but not cited in paragraph 46 or to form a belief as to the truth or accuracy of the allegations regarding them. They admit that Shen Yun, a nonprofit organization affiliated with the Falun Gong religion, is not the same thing as the Falun Gong religion itself, and that reviving traditional Chinese culture is a part of Shen Yun's mission. The Entity Defendants deny the characterizations and any remaining allegations in paragraph 46.

47.    The Entity Defendants deny the allegations contained in paragraph 47.

48.    The Entity Defendants deny the allegations in paragraph 48.

49.    The Entity Defendants deny the allegations in paragraph 49.

50.    The Entity Defendants admit that the Academy and College provide education and performing-arts training and that qualified students may have the opportunity to perform with Shen Yun through a practicum program. They aver that the College is accredited by the New England Commission of Higher Education, and that the Academy holds an absolute charter from the New York Board of Regents and is registered with the New York Department of Education. The Entity Defendants deny the remaining allegations in paragraph 50.

51.    The Entity Defendants admit that the educational curricula at the Academy and College contain both traditional academic subjects and specialized performing arts training, and deny the remaining allegations contained in paragraph 51.

52.    The Entity Defendants admit that dance students at the Academy and College are advised to develop healthy eating habits, to eat a balanced diet, and to manage their weight well, which

may include regular weigh-ins. Otherwise, the Entity Defendants deny the allegations contained in paragraph 52.

53.     With respect to Plaintiffs' or any other individual's current medical status, the Entity Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations made in this paragraph. They deny the remaining allegations in paragraph 53.

54.     The Entity Defendants admit that the Academy, College, and Shen Yun have policies related to the safe keeping of travel documents for boarding school students and student performers traveling internationally. They deny that any passport or immigration document was possessed or handled for any improper purpose, that any of them failed to return a travel document upon request, or that either Plaintiff was prevented from leaving because his or her passport was withheld. The Entity Defendants admit that boarding school students are generally required to obtain permission when leaving campus; that students are required to provide notice if they will be absent from class; and that campus transportation services offer sign-up sheets for students who wish to use them. They deny the remaining allegations in paragraph 54.

55.     The Entity Defendants deny the allegations in paragraph 55.

56.     The Entity Defendants admit that Dragon Springs is located in a rural area; that, consistent with the area's rural character, wildlife live in and around Dragon Springs; that students who lived off-campus were encouraged to take a school-provided shuttle rather than walking when there had been a bear sighting in the area; that Dragon Springs has security guards located at the two main entrances; and that visitors must check in with security. The Entity Defendants deny the remaining allegations in paragraph 56.

57.     The Entity Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 57 regarding what Academy students knew or did not know. The Entity Defendants deny the remaining allegations in paragraph 57.

58.     The Entity Defendants admit that the Academy and College maintained rules regarding students' use of smartphones, internet, media, and other materials consistent with school policy and Falun Gong principles. The Entity Defendants deny the remaining allegations in paragraph 58.

59.     The Entity Defendants admit that the Academy issues phones and tablet computers to students for use in their academic studies and coursework, and periodically checks those devices for inappropriate content. Otherwise, the Entity Defendants deny the allegations contained in paragraph 59.

60.     The Entity Defendants admit that Falun Gong study and practice are part of the educational and religious environment at the Academy and College and that the Academy and College maintain student codes of conduct consistent with the principles of the Falun Gong faith. Otherwise, the Entity Defendants deny the allegations contained in paragraph 60.

61.     The Entity Defendants admit that the Academy maintains policies consistent with both Falun Gong principles and boarding school best practices regarding interactions between boys and girls and does not allow students, almost all of whom are minors, to date. The Entity Defendants deny Plaintiffs' characterization of such policies, deny that any such policy is outside the norm for a religious boarding school, and deny the remaining allegations contained in paragraph 61.

62.     The Entity Defendants admit that the Academy holds school assemblies from time to time. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations respecting any particular person's mental state. The Entity Defendants otherwise deny the allegations contained in paragraph 62.

63.     The Entity Defendants admit that Ms. Huaping Guo was the Academy's first principal and that students are prohibited from possessing pornography. The Entity Defendants are without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations made in paragraph 63.

64.    The Entity Defendants admit that an instructor, not Mr. Li, recognized the death of a former student at an assembly and referenced a news article. The Entity Defendants deny the remaining allegations contained in paragraph 64.

65.    The Entity Defendants admit that in or around 2015, an assembly was called to reiterate internet use rules after a teaching assistant's inappropriate internet access appeared to be negatively impacting his performance at work. They admit that many students signed a commitment not to use the internet to access inappropriate content and to focus on their artistic and spiritual development. Otherwise, the Entity Defendants deny the allegations contained in paragraph 65.

66.    The Entity Defendants deny the allegations contained in paragraph 66.

67.    The Entity Defendants admit that Shen Yun tours generally run from the end of December to early May, that most troupes undertake approximately 100 performances during their tours, and that Shen Yun has policies related to the safe keeping of travel documents for student performers traveling internationally. They deny that any passport or immigration document was possessed or handled for any improper purpose and that any of them failed to return a travel document to either Plaintiff upon request. The Entity Defendants otherwise deny the allegations contained in paragraph 67.

68.    The Entity Defendants admit that while theater professionals, Shen Yun staff, and local volunteers complete most production work, it is common for Shen Yun performers and managers to volunteer to help with performance-related setup and take down. Otherwise, the Entity Defendants deny the allegations contained in paragraph 68.

69.    The Entity Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations made in this paragraph respecting any particular individual

experiencing food poisoning. They admit that Shen Yun performances last approximately two and a half hours and involve multiple dance sequences and costume changes. The Entity Defendants deny Plaintiffs' characterizations and otherwise deny the allegations contained in paragraph 69.

70.     The Entity Defendants admit that tour groups gather after each show to discuss the experience and exchange feedback and praise to help the group improve as a whole, but deny the remaining allegations contained in paragraph 70.

71.     The Entity Defendants are unaware of any instance in which a performer attempted suicide while on tour. They are without knowledge or information sufficient to form a belief as to the truth of the allegations made in this paragraph respecting any particular person's state of mind. The Entity Defendants otherwise deny the allegations contained in paragraph 71.

72.     The Entity Defendants admit that all students admitted to the Academy and the College do so at no cost to them or their families.  Students performing with Shen Yun do so as part of a credit-bearing, all-expense-paid practicum program and also receive educational stipends. The Entity Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations made in this paragraph regarding any particular person's state of mind. Otherwise, they deny the characterizations and allegations contained in paragraph 72.

73.     The Entity Defendants admit that students and performers return to Dragon Springs after Shen Yun tours, and deny the remaining allegations contained in paragraph 73.

74.     The Entity Defendants admit the allegations in paragraph 74, except that they are without knowledge or information sufficient to form a belief as to whether Sun's parents were followers of Li Hongzhi.

75.     The Entity Defendants admit that Shen Yun's mission includes reviving traditional Chinese culture before Communism, and that, as the spiritual teacher of Falun Gong and the founder of Shen Yun, Mr. Hongzhi Li discussed the role of Shen Yun in uplifting people spiritually. They lack

12

knowledge or information sufficient to form a belief as to the allegations regarding Plaintiff Sun's or his parents' understanding or state of mind. The Entity Defendants otherwise deny the allegations contained in paragraph 75.

76.    The Entity Defendants admit that Plaintiff Sun applied and auditioned for admission to Fei Tian Academy, that he failed to qualify, that he re-applied the following year, and that he was invited to New York for a trial period. The Entity Defendants otherwise deny the characterizations and allegations contained in paragraph 76.

77.    The Entity Defendants admit that Plaintiff Sun traveled from New Zealand to New York and arrived at Dragon Springs. They lack knowledge or information sufficient to form a belief as to Plaintiff Sun's alleged knowledge of the persons accompanying or transporting him. The Entity Defendants deny any remaining allegations in paragraph 77.

78.    The Entity Defendants admit that the College did not yet exist when Sun first arrived at Dragon Springs, and that, at this time, students present for a trial period were housed for a few months in overflow accommodations at the Visitors' Center until construction of new dormitories was completed, and deny the remaining allegations in paragraph 78.

79.    The Entity Defendants deny the allegations in paragraph 79, and aver that elite dance training is offered at the Academy.

80.    The Entity Defendants admit that Sun left Dragon Springs in or around August 2008 and later returned after receiving admission to the Academy as a full-time student, and deny the remaining allegations in paragraph 80.

81.    The Entity Defendants admit that Sun returned to Dragon Springs in late August 2008 as an Academy student and was assigned to "08 class" with approximately 17 other male students, and that the Academy follows policies related to the safe keeping of travel documents for boarding school

students and student performers traveling internationally. The Entity Defendants deny any remaining allegations in paragraph 81.

82.     The Entity Defendants admit that the Academy schedule involves Falun Gong study and practice; academic classwork; performing arts classes; meals; and rehearsals for students participating in the practicum program. The Entity Defendants deny that the alleged schedule is accurate, and otherwise deny the allegations contained in paragraph 82.

83.     The Entity Defendants deny the allegations in paragraph 83.

84.     The Entity Defendants admit that Sun trained for and participated in Shen Yun performances as part of a tour group that completed approximately 120 shows in the United States and Asia between December of 2008 and April of 2009. The Entity Defendants deny that Mr. Hongzhi Li required Sun to train for or join the tour, and deny the number of hours that Sun alleged that he performed. They further aver that Shen Yun performances include female-only pieces, music-only pieces, and introductions, so Sun could not have performed "in nearly every scene." The Entity Defendants deny the remaining allegations in paragraph 84.

85.     The Entity Defendants admit that Sun toured with Shen Yun and became a principal dancer. They further aver that, as Shen Yun's artistic director and spiritual leader, Mr. Hongzhi Li plays a role in casting decisions, and that Sun's attendance and participation were voluntary. The Entity Defendants deny the remaining allegations in paragraph 85.

86.     The Entity Defendants admit that a venue would often have several performances over several days with one (on most days, and occasionally two) each day, and that performers often assist with lighter setup and strike logistics. The Entity Defendants deny the remaining allegations in paragraph 86.

87.     The Entity Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 87.

88.    The Entity Defendants admit that, because Academy and College students on tour have completed their required academic coursework for the year, there is usually no such formal instruction, although they are required to complete academic assignments.

89.    The Entity Defendants admit that, after the tour referenced in para. 84, *supra*, Sun participated in six tours with Shen Yun from 2010 to 2015, including the following approximate numbers of shows on or about these dates and locations: (a) January 2010 to May 2010 (75 shows in the United States and Canada); (b) December 2010 to May 2011 (105 shows in North America and Asia); (c) December 2011 to May 2012 (73 shows in 8 countries); (d) December 2012 to May 2013 (123 shows in 3 countries); (e) December 2013 to May 2014 (117 shows in Asia); (f) December 2014 to May 2015 (93 shows in Europe, Canada, and the U.S.). The Entity Defendants deny the remaining allegations in paragraph 89.

90.    The Entity Defendants admit that Shen Yun provided all student performers, including Sun, with a per diem between January and May 2011, either by cash or by wire transfer, to cover incidental expenses. Starting in June 2011, Sun received monthly stipends from the Academy. The Entity Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 90.

91.    The Entity Defendants admit that Sun received educational stipends from the Academy and the College, and in 2014-15, a salary from Shen Yun. The Entity Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 91.

92.    The Entity Defendants deny the allegations in paragraph 92.

93.    The Entity Defendants deny the allegations in paragraph 93, except that they lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding scarring on Sun's legs.

94.     The Entity Defendants lack knowledge or information sufficient to form a belief as to whether Sun has pain in his left shoulder today. They deny all remaining allegations in paragraph 94.

95.     The Entity Defendants lack knowledge or information sufficient to form a belief as to whether Sun had an ankle injury in 2012 and as to whether Sun stood outside in the cold after a fire alarm went off. The Entity Defendants deny all remaining allegations in paragraph 95.

96.     The Entity Defendants lack knowledge or information sufficient to form a belief as to whether Sun has or had back pain and as to whether he seeks chiropractic care. They deny all remaining allegations in paragraph 96.

97.     The Entity Defendants deny the allegations in paragraph 97.

98.     The Entity Defendants lack knowledge or information sufficient to form a belief as to Sun's subjective beliefs or feelings, and deny all remaining allegations in paragraph 98.

99.     The Entity Defendants deny the allegations in paragraph 99.

100.    The Entity Defendants admit that Sun used social media while on tour in or around 2015 and that he was counseled regarding how his post violated tour rules. They deny the remaining allegations in paragraph 100.

101.    The Entity Defendants admit that Sun was expelled from the College and no longer performed with Shen Yun after May 2015 and that Sun then left the United States. They deny that Mr. Hongzhi Li terminated or expelled Sun, or that Sun was expelled for the reasons alleged. The Entity Defendants further aver that the College's administrators made the expulsion decision after serious violations of College rules, and that any tablet or phone returned upon his departure was College property. They deny the remaining allegations in paragraph 101.

102.    The Entity Defendants admit that Sun went to Taiwan and taught classes at a performing arts school, deny that Fei Tian Academy has a "branch in Tiawan," and deny the remaining allegations in paragraph 102.

16

103.    The Entity Defendants admit that Sun returned to New Zealand (although they do not know precisely when) and that he then volunteered with an independent presenter for Shen Yun in New Zealand. They lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 103.

104.    The Entity Defendants lack knowledge or information sufficient to form a belief as to whether Sun volunteered with Vision Times in New Zealand. They deny all remaining allegations in paragraph 104.

105.    The Entity Defendants admit that Cheng lived in New Zealand in 2008 and that her mother says she practiced Falun Gong, but lack knowledge or information sufficient to form a belief as to whether Cheng's mother was "a devout follower of Hongzhi Li."

106.    The Entity Defendants deny that Mr. Hongzhi Li issued 'decrees' or that Minghui.org disseminated such "decrees" as alleged. The Entity Defendants lack knowledge or information sufficient to form a belief as to Cheng's mother's requirements for Cheng or the extent of Cheng's exposure to websites, and deny any remaining allegations in paragraph 106.

107.    The Entity Defendants admit that a Falun Gong conference occurred in New York in 2008, but lack knowledge or information as to the number of attendees, or whether Cheng and her. mother attended. Defendants deny the remaining allegations in paragraph 107.

108.    The Entity Defendants admit that Cheng auditioned for Fei Tian Academy; and that she failed the audition and was not admitted to the Academy. They lack knowledge or information sufficient to form a belief as to whether and why Cheng's mother may have taken her to a Shen Yun performance in Auckland, New Zealand.

109.    The Entity Defendants admit that Cheng auditioned at Dragon Springs in or around 2009 and was not admitted at that time, and deny the remaining allegations in paragraph 109.

110. The Entity Defendants lack knowledge or information sufficient to form a belief as to whether Plaintiff Sun attended a performance. They admit that Cheng participated in another audition in or around 2010 and was later accepted to the Academy, The Entity Defendants deny the remaining allegations in paragraph 110.

111. The Entity Defendants admit that Cheng arrived at the Academy on or about June 4, 2010, when she was 13 years old. They further aver that Cheng's passport, along with other student travel documents, were maintained for safekeeping and school-related travel and returned when needed, but deny that she could not access it.

112. The Entity Defendants admit that Cheng's Academy schedule included academics, dance training, Falun Gong exercises or study, meals, and rest, and deny that Cheng's schedule was as alleged and that dance training occupied "the rest of the day until 11:00 p.m." The Entity Defendants lack knowledge or information sufficient to form a belief as to what Cheng did in her own time and how much she slept, and deny any remaining allegations in paragraph 112.

113. The Entity Defendants deny the allegations in paragraph 113.

114. The Entity Defendants deny the allegations in paragraph 114.

115. The Entity Defendants admit that academic subjects taught at Fei Tian Academy include algebra, science, Chinese history, Chinese language, and English language. They deny the remaining allegations in paragraph 115.

116. The Entity Defendants deny the allegations in paragraph 116.

117. The Entity Defendants admit that Mondays were reserved as days of rest for Cheng's group, and deny the remaining allegations in paragraph 117.

118. The Entity Defendants admit that Cheng was assigned to Shen Yun-related performance groups in connection with practicum-related activities. They admit that Mr. Hongzhi Li,

as the artistic director and spiritual leader, was frequently involved with casting decisions and deny the remaining allegations in paragraph 118.

119.    The Entity Defendants admit that Cheng participated in the Academy arts curriculum and rehearsals in 2013. They deny any remaining allegations in paragraph 119.

120.    The Entity Defendants admit that Cheng participated in a Shen Yun tour as part of Group 10 beginning in or around December 2013. They deny the remaining allegations in paragraph 120.

121.    The Entity Defendants admit that Cheng traveled to cities across the United States as part of the 2013–2014 tour, and participated in 80 shows.

122.    The Entity Defendants admit that Chen traveled to South America as part of the 2015 tour and participated in 28 shows.

123.    The Entity Defendants admit that performance reviews or discussions occurred on tour. They lack knowledge or information sufficient to form a belief as to Cheng's subjective feeling of pressure not to make mistakes, and deny any remaining allegations in paragraph 123.

124.    The Entity Defendants admit that, because Academy and College students on tour have completed their required academic coursework for the year, there is usually no such formal instruction, although they are required to complete academic assignments. The Entity Defendants deny the remaining allegations in paragraph 124.

125.    The Entity Defendants deny the allegations in paragraph 125, and aver that, while on tour, Cheng had her Fei Tian-issued phone, with which she could call or text whomever she wanted, whenever she wanted. During tours, passports are kept by a staff member for safekeeping, but performers can get them whenever needed.

126.    The Entity Defendants deny the allegations in paragraph 126.

127. The Entity Defendants deny that Cheng was denied medical care, forced to continue dancing despite "excruciating pain." They lack knowledge or information sufficient to form a belief as to the exact circumstances of any ankle sprain in or around 2010, and deny the remaining allegations in paragraph 127.

128. The Entity Defendants lack knowledge or information sufficient to form a belief as to the circumstances of any arm injury that Cheng claims to have suffered in or around 2011, and deny the remaining allegations in paragraph 128.

129. The Entity Defendants lack knowledge or information sufficient to form a belief as to the allegation in the last sentence. They deny the remaining allegations in paragraph 129.

130. The Entity Defendants deny the allegations in paragraph 130.

131. The Entity Defendants lack knowledge or information sufficient to form a belief as to Cheng's present medical condition, and deny any remaining allegations in paragraph 131.

132. The Entity Defendants lack knowledge or information sufficient to form a belief as to the circumstances of any back injury alleged to have occurred in or around 2011, and deny the remaining allegations in paragraph 132.

133. The Entity Defendants lack knowledge or information sufficient to form a belief as to Cheng's reasons for remaining at Shen Yun, and deny the remaining allegations in paragraph 133.

134. The Entity Defendants lack knowledge or information sufficient to form a belief as to Cheng's subjective feelings about menstruation or feminine hygiene, and deny the remaining allegations in paragraph 134.

135. The Entity Defendants admit that, on June 18, 2015, Cheng's tour group was retired and the members were given opportunities to study other related fields, including dance teaching. Cheng was still a student enrolled in full-time study, and she was given an opportunity to explore other

possible career paths on campus. Cheng chose to help with costume maintenance as an extracurricular activity. The Entity Defendants deny the remaining allegations in paragraph 135.

136.    The Entity Defendants admit that Cheng graduated from Fei Tian Academy in 2015 but was not admitted into Fei Tian College. They lack knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 136.

137.    The Entity Defendants lack knowledge or information sufficient to form a belief as to whether Cheng volunteered with an independent Shen Yun presenter in New Zealand following her return there, or that she volunteered with Vision Times, a media project not affiliated with the Entity Defendants. The Entity Defendants deny the remaining allegations in paragraph 137.

138.    The Entity Defendants deny the allegations in paragraph 138.

139.    The Entity Defendants deny the allegations in paragraph 139.

140.    The Entity Defendants deny the allegations in paragraph 140.

141.    The Entity Defendants incorporate by reference their answers to the preceding paragraphs as if fully set forth herein.

142.    The Entity Defendants deny the allegations in paragraph 142, including subparts (a)-(i).

143.    The Entity Defendants deny the allegations in paragraph 143.

144.    The Entity Defendants deny the allegations in paragraph 144.

145.    The Entity Defendants deny the allegations in paragraph 145.

146.    The Entity Defendants deny the allegations in paragraph 146.

147.    The Entity Defendants deny the allegations in paragraph 147.

148.    The Entity Defendants incorporate by reference their responses to the preceding paragraphs as if fully set forth herein.

149.    The Entity Defendants deny the allegations in paragraph 149.

150.    The Entity Defendants admit that Mr. Hongzhi Li provides spiritual and artistic guidance to Shen Yun as spiritual leader and artistic director. They deny that he was an employee or agent and deny the remaining allegations contained in paragraph 150.

151.    The Entity Defendants deny the allegations in paragraph 151.

152.    The Entity Defendants deny the allegations in paragraph 152.

153.    The Entity Defendants deny the allegations in paragraph 153.

154.    The Entity Defendants deny the allegations in paragraph 154.

155.    The Entity Defendants deny the allegations in paragraph 155.

156.    The Entity Defendants deny the allegations in paragraph 156.

157.    The Entity Defendants deny the allegations in paragraph 157.

158.    The Entity Defendants incorporate by reference their responses to the preceding paragraphs as if fully set forth herein.

159.    The Entity Defendants deny the allegations in paragraph 159.

160.    The Entity Defendants deny the allegations in paragraph 160.

161.    The Entity Defendants deny the allegations in paragraph 161.

162.    The Entity Defendants deny the allegations in paragraph 162.

163.    The Entity Defendants deny the allegations in paragraph 163.

164.    The Entity Defendants deny the allegations in paragraph 164.

165.    The Entity Defendants incorporate by reference their responses to the preceding paragraphs as if fully set forth herein.

166.    The Entity Defendants deny the allegations in paragraph 166.

167.    The Entity Defendants deny the allegations in paragraph 167.

168.    The Entity Defendants deny the allegations in paragraph 168.

169.    The Entity Defendants deny the allegations in paragraph 169.

22

170.    The Entity Defendants incorporate by reference their responses to the preceding paragraphs as if fully set forth herein.

171.    The Entity Defendants deny the allegations in paragraph 171.

172.    The Entity Defendants admit that Mr. Hongzhi Li provides spiritual and artistic guidance to Shen Yun as  spiritual leader and artistic director. They deny that he was an employee or agent and deny the remaining allegations contained in paragraph 172.

173.    The Entity Defendants deny the allegations in paragraph 173.

174.    The Entity Defendants deny the allegations in paragraph 174.

175.    The Entity Defendants deny the allegations in paragraph 175.

176.    The Entity Defendants deny the allegations in paragraph 176.

177.    The Entity Defendants deny the allegations in paragraph 177.

178.    The Entity Defendants deny the allegations in paragraph 178.

179.    The Entity Defendants deny the allegations in paragraph 179.

180.    The Entity Defendants incorporate by reference their responses to the preceding paragraphs as if fully set forth herein.

181.    The Entity Defendants deny the allegations in paragraph 181.

182.    The Entity Defendants deny the allegations in paragraph 182.

183.    The Entity Defendants deny the allegations in paragraph 183.

184.    The Entity Defendants deny the allegations in paragraph 184.

185.    The Entity Defendants deny the allegations in paragraph 185.

186.    The Entity Defendants incorporate by reference their responses to the preceding paragraphs as if fully set forth herein.

187.    The Entity Defendants deny the allegations in paragraph 187.

188.    The Entity Defendants deny the allegations in paragraph 188.

189. The Entity Defendants deny the allegations in paragraph 189.

190. The Entity Defendants deny the allegations in paragraph 190.

191. The Entity Defendants deny the allegations in paragraph 191.

192. The Entity Defendants incorporate by reference their responses to the preceding paragraphs as if fully set forth herein.

193. The Entity Defendants deny the allegations in paragraph 193.

194. The Entity Defendants deny the allegations in paragraph 194.

195. The Entity Defendants deny the allegations in paragraph 195.

196. The Entity Defendants incorporate by reference their responses to the preceding paragraphs as if fully set forth herein.

197. Paragraph 197 states a legal conclusion to which no response is required. To the extent a response is required, the Entity Defendants deny that paragraph 197 accurately states the law applicable to Plaintiffs' claims during the relevant time periods.

198. The Entity Defendants deny the allegations in paragraph 198.

199. The Entity Defendants deny the allegations in paragraph 199.

200. The Entity Defendants deny the allegations in paragraph 200.

201. The Entity Defendants deny the allegations in paragraph 201.

202. The Entity Defendants deny the allegations in paragraph 202.

203. The Entity Defendants deny the allegations in paragraph 203.

204. The Entity Defendants deny the allegations in paragraph 204.

## **PRAYER FOR RELIEF**

The Entity Defendants deny that Plaintiffs are entitled to any relief, including but not limited to declarations, damages, punitive damages, restitution, attorneys' fees, or costs.

## AFFIRMATIVE AND OTHER DEFENSES

The Entity Defendants assert the following defenses without assuming any burden of proof that would otherwise rest with Plaintiffs and without waiving any defense preserved by the Federal Rules of Civil Procedure or applicable law. They plead these defenses in the alternative.

## FIRST AFFIRMATIVE DEFENSE

*Failure to State a Claim*

The Amended Complaint fails to state any claim upon which relief can be granted. Among other things, Plaintiffs do not plausibly allege that any Entity Defendant knowingly obtained or provided Plaintiffs' labor or services through force, threats of force, physical restraint, threats of physical restraint, serious harm, threats of serious harm, or a scheme, plan, or pattern intended to cause Plaintiffs to believe they would suffer serious harm or physical restraint if they did not perform labor or services.

## SECOND AFFIRMATIVE DEFENSE

*Statute of Limitations*

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations. The Amended Complaint alleges conduct beginning in 2008 and 2010 and principally concerning events long before this action was filed in April 2025. To the extent Plaintiffs rely on alleged events outside the limitations period, those events are not actionable. The Amended Complaint does not plead any timely TVPRA violation sufficient to revive or preserve otherwise time-barred claims.

## THIRD AFFIRMATIVE DEFENSE

*No Continuing Violation or Equitable Tolling*

Plaintiffs cannot avoid the statute of limitations through theories of continuing-violation, continuing-tort, delayed-accrual, fraudulent-concealment, or equitable tolling. Plaintiffs left Dragon Springs and

Shen Yun in or around 2015, and the Amended Complaint does not plausibly allege that any Entity Defendant prevented either Plaintiff from timely filing suit.

## FOURTH AFFIRMATIVE DEFENSE

*Ministerial Exception and Religious Autonomy*

Plaintiffs' claims are barred, in whole or in part, by the First Amendment's ministerial exception, religious-autonomy doctrine, church-autonomy doctrine, ecclesiastical-abstention doctrine, and related constitutional protections. Plaintiffs' claims seek judicial scrutiny of religious formation, religious discipline, religious education, religious performance, religious messaging, religious codes of conduct, and the relationship between religious organizations and persons participating in their ministry.

## FIFTH AFFIRMATIVE DEFENSE

*Free Exercise, Free Speech, Association, and RFRA*

Plaintiffs' claims are barred, limited, or subject to strict scrutiny under the First Amendment's Free Exercise, Free Speech, and freedom-of-association protections and, to the extent applicable, the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et seq.* Plaintiffs would substantially burden religious exercise and religious expression by characterizing religious education, discipline, performance, and missionary activity as trafficking.

## SIXTH AFFIRMATIVE DEFENSE

*Voluntary Participation, Parental Enrollment, and Consent*

Plaintiffs voluntarily sought admission to and participated in the Academy, College, and Shen Yun. Plaintiffs and/or their parents pursued Plaintiffs' auditions, enrollment, training, and performances. Plaintiffs' participation in rigorous religious and performing-arts education and performance was not forced labor or trafficking.

26

## SEVENTH AFFIRMATIVE DEFENSE

*No Serious Harm or Threats Under the TVPRA*

The alleged conditions, rules, spiritual teachings, performance standards, discipline, travel logistics, and school protocols do not constitute "serious harm," threats of serious harm, force, threats of force, physical restraint, or threats of physical restraint within the meaning of 18 U.S.C. § 1589.

## EIGHTH AFFIRMATIVE DEFENSE

*No Knowing or Intentional TVPRA Violation*

The Entity Defendants did not knowingly or intentionally violate the TVPRA. They acted, at all relevant times, for legitimate educational, religious, artistic, safety, logistical, and operational reasons.

## NINTH AFFIRMATIVE DEFENSE

*No Trafficking with Respect to Forced Labor*

Plaintiffs were not recruited, harbored, transported, provided, or obtained for forced labor within the meaning of 18 U.S.C. § 1590. Plaintiffs and their parents sought educational and performance opportunities, and their travel and participation were not trafficking.

## TENTH AFFIRMATIVE DEFENSE

*No Document-Seizure Liability*

No Entity Defendant knowingly destroyed, concealed, removed, confiscated, or possessed Plaintiffs' passports or immigration documents in violation of 18 U.S.C. § 1592. Any retention of passports or other travel documents was for legitimate school, safety, custodial, and international-travel purposes, and not to compel labor or to prevent departure.

## ELEVENTH AFFIRMATIVE DEFENSE

*No Vicarious Liability, Agency Liability, Alter Ego, or Veil Piercing*

No Entity Defendant is liable for another Defendant's alleged acts under any theory of vicarious liability, agency, apparent agency, alter ego, reverse veil piercing, single integrated enterprise, joint venture, joint employer, or conspiracy. The Entity Defendants maintained separate legal identities and did not use corporate forms to perpetrate any wrong against Plaintiffs.

## TWELFTH AFFIRMATIVE DEFENSE

*No Beneficiary Liability*

The Entity Defendants did not knowingly benefit from participation in a venture that they knew or should have known engaged in forced labor, trafficking, document seizure, attempt, or conspiracy in violation of the TVPRA.

## THIRTEENTH AFFIRMATIVE DEFENSE

*No Civil Liability for Attempt or Conspiracy as Pleaded*

Plaintiffs' attempt and conspiracy theories fail because the TVPRA did not create the civil liability Plaintiffs assert for the relevant time periods and, in any event, the Amended Complaint does not plausibly plead an agreement, specific intent, substantial step, overt act, or actionable underlying TVPRA violation.

## FOURTEENTH AFFIRMATIVE DEFENSE

*Rule 8 and Impermissible Group Pleading*

The Amended Complaint fails to satisfy Rule 8 because it improperly lumps Defendants together, relies on conclusory assertions and pejorative labels, and does not provide fair notice of what each Entity Defendant allegedly did to each Plaintiff during each relevant limitations period.

## FIFTEENTH AFFIRMATIVE DEFENSE

*No Causation*

Plaintiffs' alleged injuries and damages were not caused by any unlawful act or omission of the Entity Defendants. Any alleged injury was caused by other persons, events, circumstances, preexisting conditions, intervening causes, superseding causes, or Plaintiffs' own choices.

## SIXTEENTH AFFIRMATIVE DEFENSE

*Failure to Mitigate*

Plaintiffs' claimed damages, if any, are barred or reduced because Plaintiffs failed to take reasonable steps to avoid, reduce, or mitigate their alleged damages.

## SEVENTEENTH AFFIRMATIVE DEFENSE

*Setoff, Credit, and Offset*

Any monetary recovery must be reduced by all amounts paid to or for Plaintiffs, including stipends, payments, travel, housing, food, education, training, medical or other benefits, and any other consideration or benefit Plaintiffs received.

## EIGHTEENTH AFFIRMATIVE DEFENSE

*Punitive Damages Unavailable or Unwarranted*

Plaintiffs are not entitled to punitive damages because the Entity Defendants did not act maliciously, willfully, wantonly, recklessly, oppressively, fraudulently, or with the level of culpability required for punitive damages.

## NINETEENTH AFFIRMATIVE DEFENSE

*Restitution, Attorneys' Fees, Costs, and Equitable Relief Unavailable*

Plaintiffs are not entitled to restitution, attorneys' fees, costs, or equitable relief except as expressly authorized by statute and proven by competent evidence. Plaintiffs have not pleaded facts supporting any such relief.

## TWENTIETH AFFIRMATIVE DEFENSE

*Laches, Waiver, Estoppel, and Unclean Hands as to Equitable Relief*

Plaintiffs' equitable claims and requests for equitable relief are barred or limited by laches, waiver, estoppel, and/or unclean hands based on Plaintiffs' delay and conduct after leaving Dragon Springs and Shen Yun.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

*No Retroactive Application or Revival of Claims*

Plaintiffs' claims are barred or limited to the extent they depend on statutory provisions, civil remedies, limitations periods, or theories of liability enacted after the alleged conduct occurred. The Entity Defendants deny that later-enacted amendments to the TVPRA apply retroactively or revive claims that were not actionable, had not accrued, or were already time-barred under the law in effect at the relevant time.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

*No Extraterritorial Liability*

Plaintiffs' claims are barred or limited to the extent they seek recovery for alleged conduct occurring outside the United States. Plaintiffs may not recover for foreign conduct except to the extent the TVPRA validly applies extraterritorially and all statutory requirements for such application are satisfied.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

*No Article III Standing or Entity-Specific Injury*

Plaintiffs lack standing, or cannot recover against one or more Entity Defendants to the extent they cannot establish a concrete and particularized injury fairly traceable to that Defendant's own alleged conduct and redressable by relief against that Defendant.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

*No Actionable Labor or Services*

The activities alleged in the Amended Complaint were educational, religious, artistic, training-related, school-related, volunteer, incidental, or practicum-related activities, and were not labor or services obtained by any Entity Defendant through force, threats, physical restraint, serious harm, threatened serious harm, abuse or threatened abuse of law or process, or any unlawful scheme, plan, or pattern within the meaning of the TVPRA.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

*Reservation of Rights*

The Entity Defendants reserve the right to amend this Answer and assert additional defenses, counterclaims, or third-party claims as discovery, investigation, motion practice, or Court orders may warrant and as permitted by the Federal Rules of Civil Procedure and any scheduling order.

**WHEREFORE**, the Entity Defendants respectfully request judgment in their favor, along with such other relief as the Court deems appropriate.

## JURY DEMAND

The Entity Defendants demand trial by jury of all issues so triable.

Respectfully submitted,

 _/s/ Steven M. Schneebaum_
Steven M. Schneebaum*
Steven M. Schneebaum, P.C.
1750 K Street, N.W., Suite #1210
Washington, DC 20006
sms@smslawdc.com
Telephone: (202) 742-5900

Justin E. Butterfield*
Lea E. Patterson*
Butterfield & Patterson, PLLC
P.O. Box 941681
Plano, Texas 75094
justin@butterfieldpatterson.com
lea@butterfieldpatterson.com
Telephone: (945) 284-0700

*Counsel for Shen Yun Performing Arts, Inc., Fei Tian College, Fei Tian Academy of the Arts, and Dragon Springs Buddhist Inc.*

*Admitted pro hac vice.*

Dated: June 29, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June, 2026, I filed a copy of the foregoing Answer with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

Dated: June 29, 2026

/s/ *Steven M. Schneebaum*